**CCMS PUBLISHING COMPANY, INC.,**
Plaintiff-Appellee,

v.

**DOOLEY–MALOOF, INC.;** Raintree Communications, Inc.; Charles J. Dooley, individually; and Thomas L. Maloof, individually, Defendants-Appellants.

No. 79–2098.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 26, 1981.
Decided April 2, 1981.

Don G. Holladay, Oklahoma City, Okl. (Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., with him, on brief), for plaintiff-appellee.

Alan P. Weinraub, Westwood, N. J., for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this removed case, plaintiff-appellee sued defendants-appellants for breaches of contract and fiduciary duties. Jurisdiction is based on diversity. Plaintiffs sought to recover amounts paid, lost profits, and exemplary damages. Defendants counterclaimed for unpaid commissions and expenses. The jury awarded plaintiff $78,607.62 in actual damages and denied exemplary damages. The jury also denied recovery on defendants' counterclaim. The court entered judgment on the verdict plus $13,500 for plaintiff's attorneys' fees. Postjudgment proceedings included an injunction barring defendants from proceeding in a state court action and an additional allowance to plaintiff of attorneys' fees in the amount of $1,600. All defendants have appealed. We affirm.

The CCMS Publishing Company, plaintiff-appellee, is an Oklahoma corporation which publishes a medical journal known as PRIVATE PRACTICE. The prime source of revenue for the journal is the sale of advertising space.

Defendants-appellants Thomas L. Maloof and Charles J. Dooley are residents of New Jersey and New York respectively. They are the sole officers and shareholders of the other two defendants-appellants, Dooley-Maloof, Inc. (DMI), a New York corporation, and Raintree Communications, Inc., a New Jersey corporation. All defendants are in the advertising business.

In October, 1973, the president of CCMS wrote Dooley and Maloof a letter stating points of agreement, Pltf.Ex. 10. Included was the following: "Full time work on *Private Practice* by both of you on or before November 5, 1973." Dooley and Maloof undertook the advertising representation of CCMS, CCMS advanced money to them and they set up a New York office with a telephone listed under the name "Private Practice." CCMS paid commissions to them on the basis of a percentage of the advertising returns. The 1973 agreement was terminated as of January 1, 1976, the effective date of an agreement dated October 14, 1975, Pltf.Ex. 12. This agreement, between CCMS and DMI contained the following provision:

"It is agreed that Messrs. Dooley and Maloof personally will devote full time to the pursuance of developing advertising revenue for *Private Practice* and that any other representation handled by Dooley and Maloof, Inc. will be undertaken completely separately and without any dilution of sales effort on the part of Messrs. Dooley or Maloof. Major accounts will be called upon at least once each six to eight weeks."

The agreement provided that either party could cancel it on thirty days notice. CCMS learned that Dooley and Maloof were not making the required number of calls and that other medical journals listed DMI as their advertising representatives. On June 30, 1976, CCMS sent DMI a written notice of contract cancellation effective July 31, 1976.

DMI sued CCMS in the federal district court for the Southern District of New York to recover unpaid commissions. On January 18, 1978, that court dismissed the action for lack of prosecution and confirmed its action by a December 27, 1978, order.

On August 28, 1978, CCMS brought the present action in Oklahoma state court and it was removed to the federal district court for the Western District of Oklahoma. The original complaint named Dooley, Maloof, and DMI as defendants. An amended complaint joined as defendant Raintree Communications, Inc.

As amended, the complaint charges that Raintree was formed by Dooley and Maloof for the express purpose of taking over the business of DMI. The first claim charges

the corporate defendants with breach of the CCMS–DMI contract. The second charges that the corporations and the individual defendants conspired to induce breach of contract. The remaining claims, against only the individual defendants, charge various types of misconduct and were treated by the parties and the court as relating to breaches of the fiduciary duties of good faith, loyalty, and full disclosure owed by the individuals to CCMS. The defendants' counterclaim seeks recovery from CCMS for unpaid commissions and expenses.

The jury verdict was for the plaintiff and against all defendants and fixed the plaintiff's actual damages at $78,607.62. The jury denied recovery of exemplary damages. The jury answered the following interrogatory in the affirmative:

"Has the plaintiff established by a preponderance of the evidence that the defendants breached certain fiduciary duties which they owed to plaintiff as a result of their relationship?"

Judgment was entered on the amount of the verdict plus an allowance of $13,500 to the plaintiff for attorneys' fees. Post-judgment proceedings and orders will be mentioned later.

■ The evidence sustains the verdict of the jury. The contract is admitted. Medical journals, other than PRIVATE PRACTICE, listed DMI as their advertising representative. Advertising in these journals is competitive. Ads for certain pharmaceutical companies appeared both in PRIVATE PRACTICE and in the other journals that CMI represented. Publishers of some of the other journals testified that DMI represented them. The testimony of both Dooley and Maloof was of doubtful credibility.

The defendants attack the sufficiency of the evidence only on the amount of damages. The jury awarded $15,000 more than the $53,607.62 paid by CCMS to defendants for commissions from January 1 to June 30, 1976. After analyzing pages of advertising and the page charges, the publisher of PRIVATE PRACTICE said that $106,193.22 was the amount of profit lost because of the breach by DMI of its contractual duties.

■ Oklahoma has held that loss of profits in an established business is a proper element of damages. *Dieffenbach v. McIntyre*, 208 Okl. 163, 254 P.2d 346, 349. Lost profits cannot be computed with certainty. Reasonable probability rather than precision is required. *Milgo Electronic v. United Business Communications, Inc.*, 10 Cir., 623 F.2d 645, 664. Although damages may not be based on speculation or guess, it is enough "if the evidence show [sic] the extent of the damage as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544. The jury award was within the limits fixed by the evidence. CCMS proved its damages to a reasonable certainty. See *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*, 10 Cir., 533 F.2d 510, 518.

Under the instructions of the court, the jury found that the defendants breached fiduciary duties owed by them to CCMS. Defendants say that the court erred in submitting the question ·to the jury and in receiving parol evidence. They argue that the October 14, 1975, contract controls and it does not forbid Dooley and Maloof from working part-time for others. That contract must be considered in its proper context. In 1973 Dooley and Maloof furnished resumes, Pltf.Exs. 8 and 9, of their experience and activities to the representative of PRIVATE PRACTICE who was in search of an advertising representative for the journal. On October 15, 1973, the publisher of PRIVATE PRACTICE wrote Dooley and Maloof a letter, Pltf.Ex. 10, stating the points of agreement. Included was:

"4. Full time work on *Private Practice* by both of you on or before November 5, 1973."

Exhibits 8, 9, and 10 were received in evidence without objection. The October 14, 1975, contract says that Dooley and Maloof "will devote full time to the pursuance of developing advertising revenue for *Private Practice*."

■ The plaintiff put its trust and confidence in the individual defendants who owned and controlled the corporate defendants. The individuals cannot escape their responsibilities by claim of corporate shield. All defendants were advertising sales agents of CCMS and owed it the duty of not acting for others whose interests conflicted with those of CCMS. Restatement of Agency, 2d. § 394, p. 219. The defendants breached that duty by representing journals which competed with PRIVATE PRACTICE.

The defendants make a convoluted argument that the court erred in disregarding the difference between the individuals and the corporations. The individuals were not charged with breach of the CCMS–DMI contract to which they, as individuals, were not parties. All defendants were charged with breaches of fiduciary duties. Dooley and Maloof were the sole shareholders and officers of DMI. When DMI stopped activity in the medical advertising field, Raintree Communications, Inc. continued the business. Dooley and Maloof were the sole shareholders and officers of Raintree. The court ordered discovery of documents of the defendants to establish the relationship among the four defendants. The unsatisfactory results justified the trial court's statement that:

> "* * * part of the reasoning behind my saying that [if] one defendant is liable, they all are [is] because the documents were not produced so we could distinguish if there is any distinction."

■ After flaunting the court's orders, the defendants are in no position to argue that the court erred as a matter of law. Oklahoma permits the court to disregard the corporate entity if used to justify wrong or perpetrate fraud. See *Robertson v. Roy L. Morgan Production Co.*, 10 Cir., 411 F.2d 1041, 1043. The question of breach of fiduciary duties was presented to the jury which, in answer to an interrogatory, said that the plaintiff established by a preponderance of the evidence that the defendants breached the fiduciary duties which they owed to the plaintiff. The record sustains the action of the jury.

Defendants say that the court erred in not instructing the jury that a contract is to be strictly construed against its drafter. The argument has no relevance. Defendants point out no ambiguities which might make the principle applicable. The contract provisions claimed to have been breached were clear. The court's instructions placed on CCMS the burden of establishing that the breaches occurred. Defendants' argument has no merit.

■ Defendants argue that the court erred in not instructing the jury that for CCMS to recover "it must prove freedom from default on the contract." The argument is that CCMS breached the contract by withholding commissions earned. This claim was advanced by the counterclaim and rejected by the jury. Also, defendants say that CCMS broke the contract by decreasing defendants' territory. This issue was not raised in the trial court and may not be considered here. *Christiansen v. Farmers Insurance Exchange*, 10 Cir., 540 F.2d 472, 477.

■ Defendants contend that the court improperly rejected relevant evidence tendered by them. We are not impressed. Defendants disregard of court orders justified the actions of the court. Pre-trial orders, not modified by the court, control the conduct of the trial and the admission of evidence. See *Smith v. Ford Motor Co.*, 10 Cir., 626 F.2d 784, 795–796, and *United States v. Rayco, Inc.*, 10 Cir., 616 F.2d 462, 464. The admission and rejection of evidence were within the discretion of the trial court and the record discloses no abuse of that discretion or manifest injustice. See *Globe Cereal Mills v. Scrivener*, 10 Cir., 240 F.2d 330, 335.

■ Defendants say that the court violated Rule 408, F.R.Ev., by receiving evidence of a compromise. During the cross-examination of the publisher of PRIVATE PRACTICE, defendants offered, and the court received, defense exhibits in which CCMS proposed payment of a certain amount to defendants, who rejected the

offer. Later Maloof wrote of his willingness to accept the offer. In the meantime CCMS learned of the extensive misconduct of the defendants and declined to accept Maloof's proposal. The defendants opened the subject and CCMS was entitled to rebut. We find no violation of Rule 408.

The district court's judgment awarded the plaintiff attorneys' fees in the amount of $13,500 for its defense of defendants' unsuccessful counterclaim to recover earned and unpaid commissions. An Oklahoma statute allows recovery by the prevailing party of a reasonable attorney fee in an action to recover for labor and services. 12 Okl.Stat. § 936. See *Russell v. Flanagan*, Okl., 544 P.2d 510, 512, and *Kilpatrick Brothers, Inc. v. International Business Machines Corporation*, 10 Cir., 464 F.2d 1080, 1083–1084. We agree with the trial court that under the Oklahoma statute the plaintiff was entitled to attorneys' fees as the prevailing party on the defendants' counterclaim for services rendered. The court held an evidentiary hearing on the value of attorneys' services. On the evidence adduced the award of $13,500 was reasonable.

. The trial court denied defendants' motion to stay execution of the judgment. The record shows no supersedeas bond. Maneuvers of the defendants to prevent enforcement of the judgment culminated in a New York state court action against CCMS and its publisher seeking recovery of earned commissions. CCMS moved in the Oklahoma case for a preliminary injunction barring defendants from proceeding in the New York action. After notice, which is not attacked, the Oklahoma court held a hearing.

Defendants assert the propriety of the New York action because it was based on quantum meruit rather than contract. Rule 13(a), F.R.Civ.P., provides for a compulsory counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The purpose of the Rule is to prevent multiple actions and to achieve resolution in a single suit of disputes arising out of common matters. *Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31. The counterclaim was proper and was rejected by the jury.

Oklahoma provides for permissive, but not compulsory, counterclaims. 12 Okl. Stats. § 272, and *Meyer v. Vance*, Okl., 406 P.2d 996, 999. We need not consider whether federal or state law controls because under either the parties have litigated the issue. Id. at 1001–1002. The defendants cannot escape on the assertion that the Oklahoma federal case was on contract and breach of fiduciary duties whereas the New York case is based on quantum meruit. In the federal case defendants had full opportunity to litigate their claim for earned commissions and they lost. They may not relitigate their claim by changing its label to quantum meruit.

After hearing evidence and argument and after considering the court records, the court found that defendants were acting to prevent the court from protecting and effectuating its orders and from exercising jurisdiction over those orders. A federal court may enjoin state proceedings where necessary to protect or effectuate its judgments. 28 U.S.C. § 2283; see also *Mitchum v. Foster*, 407 U.S. 225, 235–236, 92 S.Ct. 2151, 2158–2159, 32 L.Ed.2d 705. The injunction was proper.

After commenting that the defendants had offered no evidence of their good faith or that their actions were for purposes other than harassment the court found to the contrary and taxed defendants and their New York counsel, Alan P. Weinraub, with costs and attorneys' fees of $1,600. Defendants argue that the award may not stand because there was no finding of bad faith. The court rejected defendants' good faith claim and found that their actions were "vexatious and constituted oppressive conduct." This is enough. See *Nemeroff v. Abelson*, 2 Cir., 620 F.2d 339, 349–350.

The defense claim that the award of attorneys' fees is improper, because the court did not find specific facts to sustain the conclusions of bad faith and oppressive con-

duct, merits no consideration. The record does not contain a transcript of the hearing on the motion for injunction and defense counsel made no request for specific findings. In the circumstances presented, we have no basis for upsetting the award of attorneys' fees.

Affirmed.