**ART JANPOL VOLKSWAGEN, INC., d/b/a Art Janpol Motors, Plaintiff-Appellee Cross-Appellant,**

v.

**FIAT MOTORS OF NORTH AMERICA, INC., Defendant-Appellant Cross-Appellee.**

Nos. 83–1401, 83–1526.

United States Court of Appeals, Tenth Circuit.

July 10, 1985.

Oliver Burton Cohen of Cohen & Aldridge, P.A., Albuquerque, N.M., for plaintiff-appellee cross-appellant.

Jeffrey E. Livingston of Pavia & Harcourt, New York City (David A. Botwinik and Richard L. Mattiaccio of Pavia & Harcourt, New York City, and Nicholas R. Gentry of Johnson and Lanphere, P.C., Albu-

querque, N.M., with him on brief), for defendant-appellant cross-appellee.

Before SETH, LOGAN, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Art Janpol Volkswagen, Inc. ("Janpol"), a New Mexico corporation, brought this diversity action against Fiat Motors of North America, Inc. ("Fiat"), a New Jersey corporation, alleging breach of contract and seeking monetary and injunctive relief. After a bench trial on the merits, the district court entered judgment in favor of Janpol, and awarded compensatory and punitive damages. The court denied attorneys fees to Janpol, and both parties appeal. We affirm in part and reverse in part.

## I.

## BACKGROUND

Janpol is an automobile dealer in Albuquerque, New Mexico, engaged in the sales of various makes of imported cars. Fiat is the North American importer and distributor for Fiat cars manufactured in Italy. In 1977 Janpol and Fiat entered into an automobile dealership contract governed by a "Dealer Sales & Service Agreement."[1] Under this contract Fiat agreed to sell Fiat cars to Janpol for resale on the retail market. Fiat also agreed to supply Janpol with replacement and repair parts and to reimburse Janpol for certain warranty repairs. The parties operated under their agreement satisfactorily until approximately 1981, when their relationship began to deteriorate. At that time, Janpol began receiving a number of weather-beaten and defective cars from Fiat. Many of the cars had been stored outside in unprotected conditions for lengthy periods as a result of declining sales in the United States and problems related to work stoppages and strikes in Italy. The cars required a substantial amount of repair and refurbishing

before Janpol could sell them to its retail customers. While Fiat bore the expense of the repair and refurbishing, a number of cars were returned to Fiat, at Janpol's expense, when Janpol concluded that it could not sell them lawfully in New Mexico as new cars.

In addition to the problems related to storage, a number of Janpol's Fiat customers experienced serious and costly mechanical problems with cars both inside and outside the new car warranty period. The problems included malfunctions in the cars' cooling, oil, ignition, transmission, exhaust and electrical systems. According to witnesses for both Fiat and Janpol, some of these problems were caused by design defects, while others were caused by poor workmanship during manufacturing and assembly. These problems occurred throughout the life of the contract but increased noticeably in 1979 and 1980.

Janpol and Fiat also became embroiled in numerous disputes over the processing and payment of warranty claims that Janpol submitted to Fiat. These claims were to be submitted and processed in accordance with specific Fiat warranty procedures and payment to Janpol required approval and authorization by Fiat. Disputes as to the necessity, amount, and proper submission of warranty claims increased, and many claims remained unresolved. As a result, in 1981 Janpol refused to perform any further warranty or recall repair work for Fiat unless Fiat customers paid for such work in advance. Relations between Janpol and Fiat worsened until February 1982 when Fiat notified Janpol that it intended to cancel Janpol's franchise and to terminate the contract because of Janpol's refusal to perform warranty claim and recall service work. Janpol brought an action in New Mexico state court seeking to enjoin Fiat's cancellation of the franchise agreement and alleging breach of contract. Janpol sought damages for lost profits, loss of business goodwill, repair work expenses,

---

1. The contract also incorporated by reference the "Fiat Dealer Operating Requirements Agreement," the "Fiat Warranty Policy & Procedure Manual," and the "Fiat Pre-Delivery Inspection Program."

unpaid warranty claims, shipping expenses, diminution in the value of its inventory of Fiat cars, and diminution in the value of the franchise. Janpol also claimed that Fiat had violated the New Mexico Motor Vehicle Dealers Franchising Act, N.M.Stat. Ann. §§ 57–16–1 *et seq.* (1978 & Supp.1981). Finally, Janpol sought punitive damages and attorneys fees.

Fiat removed the action to federal district court. Following a bench trial on the merits, the court found that Fiat had failed to provide Janpol with saleable quality cars and had failed to honor Janpol's proper warranty claims. The court also found that as a result of customer complaints and in order to maintain its business reputation, Janpol was forced to make warranty repairs and bear the cost itself, to repurchase cars from dissatisfied customers and resell them at a loss, and to defend and settle lawsuits brought by dissatisfied Fiat purchasers. The court awarded Janpol $38,-198 in compensatory damages and $50,000 in punitive damages.[2] In a separate order entered after the judgment on the merits, the court denied Janpol's request for attorneys fees. On appeal, Fiat contends that the district court erred in (1) finding a breach of contract; (2) computing the compensatory damages; and (3) awarding punitive damages. On cross-appeal, Janpol argues that the district court erred in denying its request for attorneys fees.

## II.

### BREACH OF CONTRACT

■ Fiat first claims that the district court erred in finding that Fiat failed to provide Janpol with quality cars and improperly rejected Janpol's warranty claims. Fiat argues that its actions do not constitute a breach of contract and also argues that the finding of improper rejection of warranty claims is not supported by the evidence.[3] We disagree.

The findings of fact by a trial court must be upheld on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a). Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *See, e.g., Anderson v. City of Bessemer City,* —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 53 U.S.L.W. 4314, 4317 (1985), *Thornton v. Coffey,* 618 F.2d 686, 690 (10th Cir.1980); *Diggs v. Western Electric Co.,* 587 F.2d 1070, 1072 (10th Cir.1978). Our review of the record shows that the trial court's finding of breach of contract is supported by the evidence and is not clearly erroneous.

Under the terms of the contract, Fiat expressly agreed to provide Janpol with quality cars.[4] Janpol produced evidence that a number of cars were delivered to it in a deteriorated condition, and witnesses for both Fiat and Janpol testified that many cars were not saleable when received because of weather damage and mechanical problems. Fiat argues that it did not breach its obligation to provide quality cars because it agreed to pay for the repair and refurbishing of the cars after Janpol received them and before they were sold. Janpol also presented evidence, however, that on at least one occasion it rejected almost all the cars in one shipment when it concluded that the cars could not be sold lawfully as new cars to New Mexico con-

---

**2.** The court rejected the remainder of Janpol's damage claims, including loss of franchise value and loss of future profits from new and used car sales, car service, and parts sales. The court found that Janpol had failed to establish these claims by a preponderance of the evidence.

**3.** Fiat also argues that the contract is governed by New York common law and the Uniform Commercial Code. Fiat did not raise these issues in the proceedings before the district court and we need not address them on appeal. *See Kenai Oil & Gas, Inc. v. Dep't of Interior,* 671

F.2d 383, 388 (10th Cir.1982); *CCMS Publishing Co. v. Dooley-Maloof, Inc.,* 645 F.2d 33, 37 (10th Cir.1981); *B & J Crane & Rigging, Inc. v. Beker Resources Corp.,* 587 F.2d 1065, 1068 (10th Cir. 1978).

**4.** The Dealer Sales and Service Agreement contains an introductory provision entitled "Basis of Agreement" which states in part: "[Fiat] must distribute only quality Fiat motor vehicles to quality dealers." Rec., vol. I, at 9.

sumers after such repair and refurbishing.[5] In addition, in a number of cases where Fiat directed Janpol to repair cars it had received in an unsaleable condition, the parties subsequently became embroiled in unresolved disputes over Janpol's right to reimbursement for these repairs. Janpol introduced evidence that as a result of these uncorrected problems and other Fiat car defects, it was forced to sell several cars as used, to sell several more at a substantial loss from the retail price for a new car, to repurchase several cars from dissatisfied customers, and to perform repairs for customers free of charge in order to preserve customer goodwill and its reputation as a car dealership. At the time of the lawsuit, Janpol also possessed three newly delivered Fiat cars which it apparently had accepted but was unable to sell because of subsequent mechanical defects, and which Fiat refused to repurchase. Thus, despite Fiat's claim that subsequent repairs could cure its failure to deliver quality cars, the record indicates that Janpol's subsequent attempts at repair were often fruitless, unsuccessful, and uncompensated.

▮ The district court also found that Fiat had willfully and improperly failed to honor fifty-eight proper warranty claims in the amount of $7,633. Fiat contends that it was simply following its standard warranty claims procedures, as prescribed by the contract, and that the court's finding is clearly erroneous because there is insufficient evidence to show that Janpol's claims were proper. We are not persuaded.

At trial, Janpol's service manager testified that he was familiar with the warranty claims procedures and that Janpol followed the prescribed procedures in submitting claims. He also testified that from his experience, Fiat's warranty rejection rate was much higher than that of other car manufacturers. The service manager and Janpol's president testified that on several occasions, Janpol obtained prior authorization from Fiat for major repairs but that Fiat then rejected the warranty claims after the repairs were completed. The record contains evidence that Fiat's warranty review policies were inconsistent, that claims were rejected with no reason given, and that on occasion, Fiat had allowed claims that were not submitted in accordance with its procedures.

Moreover, the record indicates that Fiat's zone service manager, who was responsible for warranty problems with Janpol, was unable to explain a number of warranty rejections and nonpayments when confronted at trial with specific warranty claims. He admitted that, in some instances, the warranty rejection forms were not properly filled out by Fiat or did not contain sufficient information necessary to understand or to evaluate a rejection. Finally, the record contains Fiat's reports of periodic inspections of the Janpol dealership conducted by Fiat's field service representative from 1978 to 1981. These records indicate that Fiat considered Janpol's warranty claims administration to be generally satisfactory. While Fiat introduced evidence to rebut Janpol's claims and to attack the credibility and expertise of Janpol's employees, we cannot say that the district court erred in finding that Janpol's warranty claims were properly submitted and improperly rejected. *See Anderson,* —— U.S. at ——, 105 S.Ct. at 1512.

Fiat's obligations to provide Janpol with quality cars and to reimburse proper warranty claims went to the very heart of the parties' agreement. Fulfillment of these obligations was vital to Janpol's success as well as to a successful business relationship between the two parties. The district court did not err in concluding that Fiat's actions constituted a material breach of its contract with Janpol. The award of $7,633

---

5. Fiat argues that this conclusion by Janpol was erroneous and unreasonable. After reviewing the relevant New Mexico statutes, we conclude that Janpol's fear that it might incur liability was not unfounded. *See* N.M.Stat.Ann. §§ 57–12–1 *et seq.* (1978 & Supp.1981); N.M.Stat.Ann. §§ 57–16–1 *et seq.* (1978 & Supp.1981). We do not decide whether the sale of refurbished cars as new constitutes fraud, but we believe these statutory provisions support the district court's decision to assess the quality of some of the cars as of the time of their delivery to Janpol by Fiat.

in damages for improper rejection of warranty claim likewise is not clearly erroneous.

## III.

## COMPENSATORY DAMAGES

In addition to damages for improper rejection of warranty claims, the district court awarded Janpol compensatory damages of $15,000 for goodwill customer repairs and $15,565 for losses Janpol incurred in repurchasing cars from its dissatisfied Fiat customers.[6] Fiat argues that these damages awards are erroneous and not supported by the evidence.

■ Mr. Art Janpol, Janpol's president and general manager, testified that Janpol had performed a significant number of repairs and services free of charge for its dissatisfied Fiat customers. These repairs and services were not covered by the Fiat warranty and Mr. Janpol testified that the repairs and services were performed to preserve Janpol's reputation as a car dealer and to retain customer goodwill. He based the amount of claimed repairs on an estimated percentage of total dealership car service sales for 1979 and 1980. At trial, Fiat made no attempt to rebut or challenge this estimate but argues on appeal that proof of these damages was inadequate and that the damages were not the result of any breach by Fiat. We are not convinced that the district court's findings are clearly erroneous. The uncontroverted testimony of Mr. Janpol and the evidence of an inordinate amount of Fiat repair work by Janpol support a claim for damages of $15,000 for goodwill repairs.

**6.** The district court's findings of fact state, in pertinent part:

"13. Plaintiff has suffered the following damages:

| | | |
|---|---|---|
| (1) Unpaid warranties | | $ 7,633.00 |
| (2) Good will service work (estimated) | | 15,000.00 |
| (3) Repurchase of cars & losses: | | |
| a. | SN 9800 Lemon | 700.00 |
| b. | SN 2834 Knott | 1,050.00 |
| c. | SN 3325 Lano | 1,948.00 |
| d. | SN 4802 Winterink | 3,526.00 |
| e. | SN 2308 Barr | 2,775.00 |
| f. | SN 2535 Bates | 1,505.00 |
| g. | SN 6822 Richesin (exclusive of $2,300 warranty loss) | 4,061.00 |
| | TOTAL | $38,198.00" |

Rec., vol. I, at 92.

**7.** *See* note 6, *supra.*

Fiat also challenges on appeal the entire award of $15,565 in damages for repurchase losses, disputing Janpol's computations for individual transactions as well as Janpol's motives and the reasonableness of its decisions to repurchase or resell certain cars. At trial, Janpol produced testimony and documentary evidence in support of these claims for damages except for two items that we will address below. For the most part, Fiat made no attempt to rebut or challenge this evidence. We will not consider arguments made for the first time on appeal. *See Kenai Oil & Gas, Inc. v. Department of Interior,* 671 F.2d 383, 388 (10th Cir.1982); *CCMS Publishing Co. v. Dooley-Maloof, Inc.,* 645 F.2d 33, 37 (10th Cir.1981); *B & J Crane & Rigging, Inc. v. Beker Resources Corp.,* 587 F.2d 1065, 1068 (10th Cir.1978).

■ There are, however, two items of damages for which there clearly is no support in the record. The first involves a 1979 Fiat which Janpol sold to a Mr. Barr and subsequently repossessed for nonpayment.[7] Janpol resold the car to another customer, who immediately experienced severe mechanical problems and returned the car in exchange for a full refund. The record indicates that Janpol's computation of its loss of $2,775 includes a loss of $1,958 attributed to the car's initial repossession. There is no evidence in the record to support a determination that this $1,958 loss was due to Fiat's breach of contract or to the problems Janpol experienced with Fiat cars. Because the $1,958 loss appears to be due solely to a decline in the value of a new car which was repossessed for nonpayment, this portion of the $2,775 damage award is clearly erroneous.

■ The second error involves the repurchase of a 1979 Fiat from a Mr. Lano.[8] Janpol subsequently resold this car at a loss of $550. In Plaintiff's Exhibit 9–D, submitted in support of this claim, Janpol subtracted its $1,398 profit from the original sale to Mr. Lano, and arrived at a loss figure of $550. Although the trial court accounted for this profit deduction on all the other repurchase losses, it failed to do so in this instance and awarded Janpol $1,948. We have a definite and firm conviction that the trial court erred in its calculation. The award of this additional $1,398 is clearly erroneous.

In sum, the award of damages of $15,000 for goodwill repairs is affirmed. The award of damages of $15,565 for repurchase losses is reduced by the amount of $3,356. The balance of this award, in the amount of $12,199, is affirmed.

### IV.

### PUNITIVE DAMAGES

■ Fiat also argues that the district court erred in awarding Janpol $50,000 in punitive damages. Under New Mexico law, punitive damages normally are not recoverable for breach of contract. *Whitehead v. Allen*, 63 N.M. 63, 313 P.2d 335, 336 (1957); *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736, 740 (1940). New Mexico does recognize an exception to this rule, but only for a breach of contract that is "maliciously intentional, fraudulent or oppressive, or committed recklessly or with a wanton disregard of the rights of the plaintiff." *Lujan v. Pendaries Properties, Inc.*, 96 N.M. 771, 635 P.2d 580, 583 (1981); *see also State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798, 800 (1974). In addition, the New Mexico Motor Vehicle Dealers Franchising Act permits an award of punitive damages in cases where a defendant has acted "maliciously." N.M.Stat.Ann. § 57–16–13 (1978).

8. *See* note 6, *supra.*

9. While neither Janpol nor Fiat raised this issue of timeliness on appeal, it involves a question of subject matter jurisdiction and this court may raise the issue *sua sponte*. *See* Fed.R.Civ.P.

■ The district court did not find that Fiat's actions were maliciously intentional, fraudulent, oppressive, reckless, or undertaken with wanton disregard of Janpol's rights. The court found only that Fiat "willfully and improperly" denied the warranty claims and "willfully breached its contract" with Janpol. Rec., vol. I, at 93. The court then concluded that Janpol was entitled to punitive damages.

We believe the district court erred in awarding punitive damages for willful breach of contract when the New Mexico Franchise Act and New Mexico common law clearly authorize an award of punitive damages only when the breaching party has acted maliciously. A breach may be willful or intentional and yet not rise to a level of conduct warranting an award of punitive damages. Absent a finding of malice, the district court's award of punitive damages was incorrect as a matter of law and must therefore be reversed.

### V.

### ATTORNEYS FEES

In its cross-appeal, Janpol argues that the district court erred in denying its request for attorneys fees. Whatever the merits of Janpol's claim, we need not address them because Janpol's appeal on this issue was not timely filed.[9]

In its complaint, Janpol requested attorneys fees along with its claims for monetary and injunctive relief. In the judgment on the merits entered on March 14, 1983, the district court awarded monetary relief but did not address the attorneys fees request. Fiat filed a notice of appeal from this judgment on March 21. Janpol then filed a motion on March 31 requesting attorneys fees. On April 12 Janpol filed a cross-appeal to Fiat's notice of appeal, while its attorneys fees motion was still

12(h)(3); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir.1982); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974).

pending. The district court ultimately denied the request for attorneys fees in an order entered May 26. Janpol did not file a notice of appeal from this order.

Janpol states that because the time allowed for filing its notice of cross-appeal would have expired before the district court acted on its motion requesting attorneys fees, it filed the notice of cross-appeal to "protect its position." Brief of Appellant at 1. Its actions reflect a misunderstanding of the process for appealing judgments on the merits and judgments awarding or denying attorneys fees. In *Cox v. Flood*, 683 F.2d 330 (10th Cir.1982), we held that "judgments finally disposing of the merits are appealable even though questions relating to attorney's fees have been left undecided." *Id.* at 331. In this case, the judgment on the merits entered on March 14 became appealable at that time, and Fiat timely filed its notice of appeal within thirty days of the entry date of the judgment. *See* Fed.R.App.P. 4(a).

Attorneys fees requests, however, raise legal issues "collateral to the main course of action" requiring "an inquiry separate from the decision on the merits." *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). As the Supreme Court's decision in *White* and our decisions in *Cox* and subsequent cases indicate, a judgment on the merits and a subsequent attorneys fees determination are separate and distinct proceedings. *See id.; Cox*, 683 F.2d at 331; *Equal Employment Opportunity Commission v. Gaddis*, 733 F.2d 1373, 1375–76 (10th Cir.1984). For purposes of appeal, each determination results in a separate and distinct final decision and the filing of a separate notice of appeal is therefore required to obtain review. Where a prompt attorney's fee determination is made, an appeal from the fee determination may normally be considered together with any appeal from a final judgment on the merits. *White*, 455 U.S. at

454, 102 S.Ct. at 1167. The possibility of consolidation on appeal does not, however, eliminate the requirement of separate notices of appeal.

■ Janpol's filing of its notice of cross-appeal did not fulfill this requirement for a separate filing. The cross-appeal on attorneys fees was filed while the attorneys fees motion was still pending in the district court. It was therefore premature and did not transfer jurisdiction to the court of appeals.[10] *See Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563, 567 (10th Cir.1979). Timely filing of a notice of appeal is mandatory and jurisdictional. *Gooch v. Skelly Oil Co.*, 493 F.2d 366, 368 (10th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *Lathrop v. Oklahoma City Housing Authority*, 438 F.2d 914, 915 (10th Cir.), *cert. denied*, 404 U.S. 840, 92 S.Ct. 132, 30 L.Ed.2d 73 (1971). Because Janpol failed to file a notice of appeal within thirty days after entry of the order denying attorneys fees, this court does not have jurisdiction to review that order.

## VI.

## CONCLUSION

The district court's award of actual damages is reduced by $3,356; it is otherwise affirmed in the total amount of $34,842. The award of punitive damages is reversed. Janpol's cross-appeal is dismissed for lack of appellate jurisdiction.

**10.** There is no indication in the record that the district court made any announcement of its decision or order concerning attorneys fees until its order was entered on May 26. Thus,

Janpol's premature filing of its cross-appeal cannot be treated as filed after and on the date of such entry. *See* Fed.R.App.P. 4(a)(2).