**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**CITY OF PITTSBURG, KANSAS, a Municipal corporation; Ernest Radell; and Brandon Radell, a minor, by and through his mother and next friend, Carol Radell, Defendants–Appellees.**

No. 92–3036.

United States Court of Appeals, Tenth Circuit.

March 22, 1993.

---

John I. O'Connor (John R. Cunningham with him on the briefs), of White, O'Connor & Werner, P.A., Pittsburg, KS, for plaintiff-appellant.

Douglas M. Greenwald of McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendant-appellee, City of Pittsburg, Kan.

Robert S. Tomassi and Kurtis I. Loy of Loy, Loy & Tomassi, P.A., Pittsburg, KS, on the brief for defendants-appellees, Ernest Radell and Brandon Radell, a minor.

Before SEYMOUR, MOORE, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Ernest Radell and Brandon Radell, a minor, by and through his mother and next friend, Carol Radell, sued the City of Pittsburg, Kansas, for injuries they sustained when a City truck accidentally sprayed them with malathion mixed with diesel fuel during a routine mosquito fogging in July 1989. The City requested its insurer, Pennsylvania National Mutual Casualty Insurance Company (PNI), to defend the Radells' action for damages for personal injury. Contending it was not required to provide the defense, PNI filed this declaratory judgment action against the City to determine whether its business automobile liability policy (the Policy) covered the claim. On cross-motions for summary judgment, the district court held the Policy's pollution exclusion did not apply to the incident in question, and PNI was required to defend. The district court also held the City was entitled to attorney's fees incurred in this action but ordered additional briefing in order to award them. *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. City of Pittsburg, Kan.*, 794 F.Supp. 353 (D.Kan.1992). We agree with the district court that the incident in litigation was "sudden and acci-

dental"; therefore, PNI has a duty to defend. We affirm the court's judgment.

## I

At the lintel of this review is the City's motion to dismiss the appeal as premature because the district court has not determined the amount of attorney's fees awarded in the declaratory judgment action. The City argues the appeal is untimely because PNI filed its notice of appeal after the court decided the merits of the insurance coverage dispute, but before the City filed its application for attorney's fees. The City contends the district court's orders on summary judgment and for reconsideration "clearly contemplate that the court would make a future determination of a specific amount of fees and expenses to be paid by plaintiff to defendant City," relying on *Nagle v. Lee*, 807 F.2d 435 (5th Cir.1987), which held for purposes of appeal, an order is not final unless it ends the litigation on the merits and leaves nothing for the court to do but execute judgment. The City argues permitting this appeal only encourages piecemeal review.

■ PNI resists the motion relying on *Cox v. Flood*, 683 F.2d 330 (10th Cir.1982), and *Art Janpol Volkswagen, Inc. v. Fiat Motors of North America, Inc.*, 767 F.2d 690 (10th Cir.1985). PNI states because the City delayed in filing its motion for attorney's fees, its appeal would have been untimely had it waited. PNI asserts the resolution on the merits is final and appealable while the attorney's fee issue remains collateral to that final judgment.[1]

*Janpol* is dispositive. In that case, while its motion for attorney's fees was pending in the district court, Janpol filed a cross-appeal to the opposing party's appeal of the merits and included the issue of attorney's fees. Rejecting Janpol's argument the notice of cross-appeal was filed "to protect its position," 767 F.2d at 697, we held Janpol's cross-appeal of the attorney's fee issue was nevertheless premature. This conclusion was premised on the distinction between the separate inquiries involved in a judg-

ment on the merits and a determination of attorney's fees. If a prompt determination of attorney's fees is made in the underlying action, that issue may be considered on appeal with the merits. *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 454, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982). However, the possibility of consolidation does not eliminate the alternative of separate appeals. "[J]udgments finally disposing of the merits are appealable even though questions relating to attorney's fees have been left undecided." *Cox*, 683 F.2d at 331 (citations omitted) (quoted in *Janpol*, 767 F.2d at 697).

*Cox*, *White*, and *Janpol* establish the attorney's fee issue is collateral. The court, thus, has jurisdiction to hear this appeal.

## II

The parties do not dispute the facts, only the meaning of the facts. On July 31, 1989, the Radells were driving eastbound on Twin Lakes Road in the City when a westbound City vehicle, a pickup with a fogging apparatus on the truck bed, approached the Radell's car. The two vehicles neared, and the City truck began turning right. Mr. Radell stated:

As we were approaching the vehicle it was not spraying. And I started to slow down so that if it did start I could stop, because I recognized it was a fogger. We were going approximately five to ten miles an hour and they weren't spraying so I figured that we could get on by. As we got almost right up on them they kicked it on and we caught the full force of it.

When the fogger activated, a mixture of one part of malathion to three parts of diesel fuel, was discharged into the Radell's car, spraying the passengers' eyes, throats, and skin.

None of the City's crew was aware of the incident when it happened. Under conditions effective at that time, the fogger had to be manually activated by a toggle switch located outside the truck. Moreover, the

---

1. The attorney's fee issue was not raised as a  motion to alter or amend.

switch could not have been energized by anyone within the truck. After the switch was activated, the fog would not start for approximately 30–60 seconds.

When the crew finished fogging at a site, the normal procedure followed was to turn off the switch, shutting off the fog, and drive to a new location where the switch was again activated. Although it is not entirely clear from the record supplied to us, the City crew was apparently on its way to a fogging site when the incident with the Radells occurred. It is nonetheless certain from Mr. Radell's deposition when he first saw the City's truck it was not fogging, and the process did not start until the truck was adjacent to the Radell's car.

Although PNI's Policy excluded coverage for injury arising out of the discharge of pollutants and PNI contended the City's fogging solution was a "pollutant," the terms of the Policy nonetheless provided coverage if the discharge was "sudden and accidental." It is unnecessary to consider PNI's argument the City was spraying a "pollutant" because the threshold question is whether the spraying of the Radells was "sudden and accidental."

To resolve that issue, and based upon the facts we have recounted, the district court held:

> It is uncontroverted that the fogging apparatus activated suddenly as the City truck passed the Radells' vehicle, and there is no evidence in the record to suggest that the City expected or intended the discharge to occur. In light of this, the court finds that the discharge was accidental, and that the Radells' claims against the City are covered by the Pennsylvania National insurance policy.

794 F.Supp. at 355. PNI now attacks this holding on several fronts. First, it contends because the City had been using the fogging system for sixteen years, the incident causing the Radells' injuries could not have been an accident. Refining its position further, PSI argues the incident could not have been "sudden and accidental," as the Policy requires. Finally, PNI contends the record does not support the district court's conclusion the evidence was uncontroverted.[2]

■ PNI's first and second positions simply ignore the subject of this case. In their action, the Radells did not contend they were injured because of the City's sixteen-year fogging operation. Instead, their claim is predicated upon the specific incident in which their car was suddenly inundated with a chemical fog. Because they claim damages for that specific incident, no inquiry is relevant here other than whether that incident was an "accident" within the meaning of the Policy.

Nevertheless, because the Policy, in part, defines an "accident" as an injury "the insured neither expected nor intended," PNI claims the long-standing spraying program and the precise routine followed by City workers on the day of the incident in loading the chemicals and spraying preclude coverage because the spraying was intentional. Moreover, PNI contends for similar reasons the injury could not have been "sudden and accidental."

Interestingly, however, PNI illustrates its argument with this hypothetical: "What if the City loaded the 55–gallon drum into the pickup and began spraying when an emergency required the driver to stop short, causing the drum to fall out of the back of the truck?" If the drum then struck the Radell's car and spilled chemicals on the Radells, PSI asserts there would be no question the event would constitute an "accident" to which its coverage applied. Yet, that is precisely the nature

2. In its brief, PNI argues the district court erred in holding: "[T]here is no evidence in the record to suggest that the City expected or intended the discharge to occur." Interestingly, PNI responds, "PNI does not believe there is any evidence in the record to support this finding of fact." One could hardly find that result astonishing. Indeed, the district court said there *was* no evidence; therefore, one would not expect to find any in the record. If there is evidence that the City intended the discharge which hit the Radells, it is PNI's burden to recite it. Instead, as we shall point out, PNI merely argues when the crew started the evening's work, it intended to spray.

of what the Radells have claimed occurred in this case!

We fail to understand PSI's distinction between the incident that actually took place and its hypothetical. In both, the injury was produced by a specific, sudden event, not the City's long-standing policy and practice. Although PNI argues the City's employees intended to spray on the evening the Radells were injured, that point begs the issue.

■ The only evidence in the record is Mr. Radell's testimony that the fogger was not operating at the time he encountered the City's crew. It, therefore, becomes disingenuous to suggest just because the City had engaged in the practice of fogging for sixteen years, and just because its employees intended to carry out this practice on the evening of the Radells' injuries, the injuries were not caused by an "accident" or that the cause of the injury was not "sudden and accidental." The cause of the injuries was something neither the City nor its employees intended or expected, as noted by the district court; thus its conclusion is correct. *See Whitaker v. State Farm Mut. Auto. Ins. Co.,* 13 Kan.App.2d 279, 768 P.2d 320 (1989) ("accident" has generally accepted meaning, " 'simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force' ") (quoting *Gilliland v. Cement Co.,* 104 Kan. 771, 773, 180 P. 793 (1919)); *Spence v. New York Life Ins. Co.,* 154 Kan. 379, 118 P.2d 514 (1941) (jury properly instructed accident is undesigned, untoward, and unlooked for event).

There is no substance in PNI's contention the district court's finding is unsupported by the record. We have documented the testimony of Mr. Radell which clearly demonstrated the fogging equipment was not operating until the City's truck came abreast of the Radell car. Moreover, the City's employee established that normally an operator could not activate the equipment without leaving the truck and manually throwing a switch. Because there is no evidence to controvert that of Mr. Radell, and none to establish that between the time Mr. Radell spotted the truck and the fogger activation the truck was stopped and the switch thrown, the district court was correct. The evidence *is* uncontroverted that the incident was sudden and accidental.[3]

The point of the evidence is that the equipment was not operating as the City truck approached the Radells, and no City employee turned it on. It is undeniable, however, the fogger engaged, and the state of the evidence is that it did so without human interference. Without any evidence to negate Mr. Radell's testimony, the only inference that can be drawn from these facts is the equipment suddenly malfunctioned.

We will not speculate, as PNI would like, that Mr. Radell's testimony is incredible. Our review of the record leads us to believe the district court's conclusion was proper. It was also the only conclusion that could have been reached on this record.

### III

Finally, PNI contends the district court incorrectly relied upon *Upland Mut. Ins., Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974), in awarding attorney's fees. PNI would distinguish the case on the basis of the particular language in the policy upon which the *Upland* court relied to conclude the insurer was liable for the insured's attorney's fees. PNI maintains the Policy does not guarantee it will defend the insured against all actions, but instead clearly establishes it had no duty to defend suits "not covered by this policy."

■ Whatever merit may reside in PNI's argument, however, must await another day. Although the district court held an award of attorney's fees was warranted, no amount was set. "[A]n award of attorney's fees is final for purposes of appeal only after the amount is determined."

---

3. PNI theorizes the accident could not have occurred "suddenly" simply because the equipment could not have been intentionally activated without operating the switch. That fact, however, does not negate, nor is it inconsistent with the district court's holding.

*Phelps v. Washburn University of Topeka*, 807 F.2d 153, 154 (10th Cir.1986) (citation omitted). Therefore, just as we initially held we have jurisdiction to consider the merits of this action because the attorney's fee issue is collateral, we lack jurisdiction in this appeal to address the same issue until the district court finally decides the matter.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.