**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA, ex
rel. JOLENE LEMMON, as personal
representative of the estate of Roger
Lemmon,

     Plaintiff - Appellant,

PATRICK COLE; KYLE
GUNDERSON,

     Plaintiffs,

v.

ENVIROCARE OF UTAH, INC.,

     Defendant - Appellee

-------------------

UNITED STATES OF AMERICA,

     Amicus Curiae.

No. 09-4079

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 02-CV-00904-BSJ)**

---

Charles W. Scarborough (and Michael S. Raab, Attorneys, Appellate Staff, Civil
Division, Department of Justice; Tony West, Assistant Attorney General; Brett L.
Tolman, United States Attorney, on the brief), Washington, D.C., for Amicus
Curiae.

Jeffrey W. Appel, (Janelle P. Eurick and Maria E. Heckel of Ray, Quinney & Nebeker, P.C.; Jeffrey D. Eisenberg and Steve Russell of Eisenberg & Gilchrist; Richard D. Burbidge of Burbidge, Mitchell & Gross, on the briefs), Salt Lake City, Utah, for Plaintiff - Appellant.

Rodney G. Snow, (Neil A. Kaplan, Walter A. Romney, Jr., and Christopher B. Snow of Clyde, Snow & Sessions, on the brief), Salt Lake City, Utah, for Defendant - Appellee.

Before **KELLY**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant Jolene Lemmon appeals from the district court's dismissal with prejudice of her complaint alleging false claims against the government. See Aplt. App. 705. The district court dismissed under Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. She contends that the district court overlooked her implied-certification (of false claims) theory and erred in rejecting her express-certification theory. Our jurisdiction arises under 28 U.S.C. § 1291 and we reverse.

Background

Brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) and (2), this suit involves qui tam claims against Defendant-Appellee Envirocare of

Utah, Inc. ("Envirocare")[1] by one of its former employees[2] and two former employees of an Envirocare subcontractor ("Plaintiffs"). Aplt. App. at 452-54. The suit arises from Envirocare's hazardous-and-radioactive-waste-disposal contracts with the federal government ("government"). Id. at 452-56. Plaintiffs allege that, between June 2000 and June 2001, Envirocare repeatedly violated its contractual and regulatory obligations by improperly disposing of the contracted-for waste. Id. at 468-86. In spite of these violations, Plaintiffs contend, Envirocare falsely represented to the government that it had fulfilled its obligations and, based on its false representations, improperly received payment from the government. Id. at 462-64, 486-87.

Specifically, Plaintiffs' claims allege that they observed and—at the direction of Envirocare superiors—participated in Envirocare's improper disposal of waste. Id. at 464-65. Plaintiffs allege that Envirocare's government contracts required it to "receive and dispose of the contaminated materials in accordance with all applicable, relevant and appropriate federal, state and local regulations . . . ." Id. at 457. The contracts further obligated Envirocare to, inter alia, (1) periodically submit written reports detailing its receipt and disposal of waste, (2) submit follow-up reports detailing any problems encountered, (3) maintain

---

[1] Envirocare has since changed its name to EnergySolutions, Inc.

[2] During the pendency of the litigation, Plaintiff and former Envirocare employee Roger Lemmon died. His survivor, Jolene Lemmon, has been substituted as a Plaintiff.

records sufficient to allow the government to confirm compliance with the contractual provisions, (4) report all contractual violations to the government, and (5) provide and maintain an inspection system for government review.  Id. at 457-61.

Plaintiffs assert that Envirocare breached its obligations by, inter alia, (1) ignoring its reporting, recording, regulatory, and maintenance requirements, (2) violating the contractual and regulatory disposal requirements pertaining to location and size of buried debris, (3) violating the contractual and regulatory disposal requirements pertaining to exposed waste materials, (4) failing to remediate and report waste spills, (5) disposing of waste without proper work orders, (6) violating disposal requirements regarding the construction and maintenance of waste-containing cells, and (7) failing to report the improper mixing of waste.  Id. at 462-86.

According to Plaintiffs, Envirocare expressly and impliedly certified fulfillment of its obligations by submitting payment requests to the government. Id. at 462, 487.  These requests, which the government paid in full, form the basis of Plaintiffs' third amended complaint.

That complaint was filed after three complaints were dismissed without prejudice and with leave to file an amended complaint.  In the last of these preceding dismissals, the district court provided an extensive analysis of the deficiencies of Plaintiffs' (second amended) complaint and gave guidance for

filing legally sufficient claims.  <u>See</u> Aplt. App. at 400-50.

Responding to the district court's analysis, Plaintiffs filed the third amended complaint.  At 37 pages, it was more than 100 pages shorter and contained over 700 fewer averments than the second.  <u>Compare</u> Aplt. App. 451-87 (third amended complaint) <u>with</u> Aplt. App. 24-173 (second amended complaint).  It contained only a handful of claims—as opposed to 67 before—and added substantial factual allegations.  It also omitted the § 3729(a)(7) claim, which the district court had dismissed for failure to state a claim.  <u>See</u> <u>id.</u> at 413-22.

Nonetheless, the district court dismissed the third amended complaint with prejudice in a two-page order.  Aplt. App. 703-04.  The order stated that the dismissal was "[f]or substantially the same reasons" set forth in the prior opinion and order dismissing the second amended complaint.  <u>Id.</u>  In relying on its prior opinion, the district court did not note the obvious and critical differences between the third and second amended complaints.  <u>See</u> <u>id.</u>  Most notably, the court made no mention of the replacement of the § 3729(a)(7) claim with implied-false-certification claims under § 3729(a)(2).  <u>Id.</u>  Indeed, the implied-false-certification claims appear to have gone unnoticed.  <u>Id.</u>  Instead, the court stated that Plaintiffs "may well have pleaded various regulatory violations," but because Plaintiffs did not "allege that [the regulations] require complete regulatory compliance before certification for payment," Plaintiffs failed to "tie[] those allegations to an identifiable, plausible 'false claim' within the meaning of the

- 5 -

False Claims Act." Id. at 704.

Discussion

We review the district court's dismissal under Rule 12(b)(6) de novo. United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008). Under 12(b)(6), we review for plausibility, specifically whether enough facts have been pled to state a plausible claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Concerning the failure to plead fraud with particularity under Rule 9(b), we also review a dismissal de novo. United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (de novo standard applies to claims under § 3729(a)(1) or (2)). Finally, Rule 8(a) dismissals are reviewed for an abuse of discretion, but to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009); Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1161-62 (10th Cir. 2007).

Before turning to the sufficiency of Plaintiffs' allegations, we review the statutory basis of their claims.

### A.     Implied and Express False Certification Claims

Plaintiffs' third amended complaint asserts claims under § 3729(a)(1) and

(2) of the False Claims Act.[3]  The FCA "covers all fraudulent attempts to cause

the government to pay out sums of money."  Conner, 543 F.3d at 1217 (quoting

United States ex rel. Boothe v. Sun Healthcare Grp., Inc., 496 F.3d 1169, 1172

(10th Cir. 2007)).  Its qui tam provisions allow an individual to sue on behalf of

the government.  31 U.S.C. § 3730(b).  Though the government may intervene

and take over a private plaintiff's case, id. § 3730(b)(2) and (c)(3), it often

declines to do so.  In such instances, the private plaintiff, termed a "relator,"

conducts the litigation and shares any recovery with the government.  Id. §

3730(d).

Section 3729(a)(1) imposes civil liability when a person "knowingly

presents, or causes to be presented" to the Government "a false or fraudulent

claim for payment or approval . . . ."  Section 3729(a)(2) renders a party liable for

"knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or

statement to get a false or fraudulent claim paid or approved by the Government .

. . ."  Violation of these provisions subjects a party to treble damages and civil

---

[3]  The Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1616 (2009) modified and renumbered the subsections of § 3729(a). The modifications included designating § 3729(a)(2) as § 3729(a)(1)(B) and adding language to the newly numbered provision to "correct erroneous interpretations of the law" which required proof that the defendant intended to induce the government to pay a false claim. *See* S. Rep. No. 111-10, at 10 (2009)).  Though Congress specified that certain changes would apply to all claims pending on June 7, 2008, see 123 Stat. at 1625, the new language does not affect this case because Envirocare submitted claims directly to the government. See Gov't Amicus Br. at 4 n.1.  To avoid confusion, we cite the pre-amendment subsection, § 3729(a)(2).

penalties.  Id. § 3729(a).

Under § 3729(a), liability can attach when a government payee submits either a legally or factually false request for payment.  Claims arising from factually false requests generally require a showing that the payee has submitted "'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'"  Conner, 543 F.3d at 1217 (quoting Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001)).  Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment.  See id.

Plaintiffs' suit rests on allegations of legal falsity—that Envirocare falsely certified compliance with, inter alia, the terms of its government contracts in seeking payment.  Plaintiffs allege both that Envirocare violated a variety of state and federal regulations and that, in doing so, it violated its contractual obligations to the government.[4]  See, e.g., Aplt. App. at 452, 486.

Plaintiffs assert claims under the FCA based on both implied and express false-certification theories.  See, e.g., Aplt. App. at 458-66; see Conner, 543 F.3d at 1217; Shaw v. AAA Eng'g & Drafting Inc., 213 F.3d 519, 531 (10th Cir. 2000)

---

[4] As we discuss below, the purported breaches of Envirocare's contractual obligations are sufficient to sustain Plaintiffs' implied-false-certification claims, thus, we need not decide whether the alleged regulatory breaches would have been sufficient.

(recognizing that, in light of the FCA's language, structure and legislative history, § 3729(a) authorizes claims for false certification of compliance with a government contract under both implied and express false-certification theories).

Claims under an express-false-certification theory arise when a payee "falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." Conner, 543 F.3d at 1217 (quoting Mikes, 274 F.3d at 698). The payee's "certification" need not be a literal certification, but can be any false statement that relates to a claim. Id.; see, e.g., United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006) ("So long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach.").

While express-false-certification claims may presumably arise under any subsection of § 3729(a), we have held that implied-false-certification claims can arise under § 3729(a)(1) but not under § 3729(a)(2). Shaw, 213 F.3d at 531-32. In so finding, we recognized that § 3729(a)(1) requires "only the presentation of a false or fraudulent claim for payment or approval" without the additional § 3729(a)(2) requirement of a "false record or statement." Id. (internal quotation marks and citations omitted). Thus, claims under an implied-false-certification theory do not require courts to examine a payee's statements to the government. Rather, "the analysis focuses on the underlying contracts, statutes, or regulations

- 9 -

themselves to ascertain whether they make compliance a prerequisite to the government's payment." Conner, 543 F.3d at 1218. "If a contractor knowingly violates such a condition while attempting to collect remuneration from the government, he may have submitted an impliedly false claim." Id.

In this circuit, the nature of claims advanced under an implied-false-certification theory has been addressed most directly in Shaw. 213 F.3d at 531-33. In Shaw, and later in Conner, we recognized that the key attribute of implied-false-certification claims—and what most clearly differentiates them from express-false-certification claims—is that the payee's request for payment lacked an express certification. Id. Thus, we found that the pertinent inquiry for such claims is not whether a payee made an "affirmative or express false statement," but whether, through the act of submitting a claim, a payee knowingly and falsely implied that it was entitled to payment. Id. at 532-33; see also Conner, 543 F.3d at 1218.

Though implied claims differ from express claims, they nonetheless share some common elements, including a materiality requirement. This requirement necessitates showing that the false certification was "material to the government's decision to pay out moneys to the claimant." Conner, 543 F.3d at 1219 (internal quotation marks and citations omitted). Thus, a false certification—regardless of whether it is implied or express—is actionable under the FCA only if it leads the government to make a payment which, absent the falsity, it may not have made.

Id.

### 1. Implied False Certification Claims

To state viable implied-false-certification claims, Plaintiffs' third amended complaint needed to contain sufficient factual allegations to show that Envirocare knowingly submitted legally false requests for payment to the government, that the government paid the requests and that, had the government known of the falsity, it may not have paid. While Plaintiffs were not required to prove their case in the complaint, they needed to give enough facts to show that relief was plausible. See Twombly, 550 U.S. at 553.

The third amended complaint contained sufficient factual allegations to support Plaintiffs' implied-false-certification claims. First, they documented a series of instances in which they personally observed Envirocare violate its contractual and statutory obligations. See Aplt. App. at 464-86. For the alleged violations, Plaintiffs detailed the violative activity, the regulation or contractual provision violated, the date on which the alleged violation occurred, and the Plaintiff that witnessed or, at Envirocare's direction, participated in the activity. See id. Next, Plaintiffs explained how Envirocare was aware of the violations, listing specific instances in which Plaintiffs documented and/or informed their superiors of the violations. See id. With regard to government payments, Plaintiffs provided the dates, numbers, and amounts of Envirocare's requests for payment under its contracts with the government. Id. at 456-57. Plaintiffs stated

that they had reviewed "all" of Envirocare's requests for payment during the pertinent period and that none disclosed any violations of Envirocare's contractual or regulatory obligations.  Id. at 464.  Plaintiffs further alleged that each request for payment submitted during the pertinent time period was paid in full by the government.  Id.  Finally, addressing the materiality requirement, Plaintiffs cited specific contractual provisions under which the government, had it been aware of the violations, may have refused or reduced payment to Envirocare.  Id. at 459.  Plaintiffs also showed that the violations undercut the purpose of the contracts—the safe and permanent disposal of waste.  See, e.g., id. at 466-68, 472-77, 482-85.  Based on the contractual provisions, Plaintiffs contended that, had it been aware of the violations, the government may not have paid in full.

Viewing Plaintiffs' allegations, it is difficult to discern the purported Rule 12(b)(6) deficiencies.  As noted above, the district court did not mention the implied-false-certification claims.  Instead, the district court's order faulted Plaintiffs for not "tying the alleged incidents with an identifiable certification of regulatory compliance."  Aplt. App. at 704.  As explained above, implied-false-certification claims do not involve—let alone require—an explicit certification of regulatory compliance.

The district court found that Plaintiffs failed to allege that the state and federal regulations "require complete regulatory compliance before certification for payment."  Id.  Yet Plaintiffs' third amended complaint makes clear that the

- 12 -

alleged regulatory violations also constituted material breaches of Envirocare's

contractual obligations. See, e.g., Aplt. App. at 457 ("Pursuant to the specific

provisions of the Contracts, Envirocare agreed and was obligated to receive and

dispose of contaminated materials in accordance with all applicable, relevant and

appropriate federal, state and local regulations . . . ."), 486 ("The numerous

violations detailed in paragraphs 68-129 are all material violations of

Envirocare's contracts with the U.S. Government . . . . None of these violations

were reported to the U.S. Government as required by the contracts."). Even if

Plaintiffs failed to state a claim arising directly from Envirocare's regulatory

obligations, Plaintiffs' allegations provided more than enough factual detail to

support their contract-based claims.

Envirocare largely ignores Plaintiffs' extensively pled contract-based

claims, arguing instead that numerous regulations govern waste disposal, and that,

because remedies for regulatory violations abound, no claims can arise directly

from its purported regulatory breaches. See Aplee. Br. at 14-18. Even if

accepted as true, Envirocare's argument does little to justify the dismissal because

none of Plaintiffs' claims rely exclusively on regulatory breaches.

Equally unavailing is Envirocare's materiality argument. On this front,

Envirocare contends that Plaintiffs' pleading failed to show that, had the alleged

violations been known by the government, they would have affected the

government's payment decision. Aplee. Br. at 18. But materiality does not

require a plaintiff to show conclusively that, were it aware of the falsity, the government would not have paid. Rather, it requires only a showing that the government *may* not have paid. See Conner, 543 F.3d at 1219-20. Here, as Plaintiffs point out, the pertinent contracts explicitly state that if Envirocare fails to live up to all of its contractual obligations the government might refuse or reduce payment. Taken in context, such allegations are enough.

Because Plaintiffs sufficiently pled their contract-based claims, the district court's Rule 12(b)(6) dismissal was in error.

### 2. Express False Certification Claims

Plaintiffs' third amended complaint sufficiently alleges that Envirocare knowingly submitted legally false requests for payment to the government and that the government paid the requests. Thus, in order to sustain their express-false-certification claims, Plaintiffs need only to have alleged—with sufficient factual basis—that the requests contained a false statement and that the statement was material to the government's decision to pay. Plaintiffs' third amended complaint addresses the false-statement requirement by pointing to the payment requests' certification that "the payments requested were only for work performed in accordance with the specifications, terms and conditions of the contract . . . ." Aplt. App. at 462. Because Envirocare's work was not performed in accordance with the contractual requirements, Plaintiffs allege, the certifications were false.

Envirocare contends that the FCA does not apply because the language of

the certification fails to certify compliance with any specific contractual term. See Aplee. Br. 30-31, 33. Envirocare relies on language in Conner regarding certification of compliance with a "*particular . . .* contractual term." Conner, 543 F.3d at 1217 (quoting Mikes, 274 F.3d at 698) (emphasis added)). So read, this language would preclude claims whenever a payee certifies compliance with *all* contractual requirements rather than with a single, specific contractual requirement.[5] Such a reading runs counter to the plain language of § 3792(a)(2), the FCA's broad application to "all fraudulent attempts to cause the Government to pay out sums of money," United States v. Neifert-White Co., 390 U.S. 228, 233 (1968), the legislative history of the FCA, see, e.g., S. Rep. No. 99-345 (noting that the FCA covers any "claim for goods or services . . . provided in violation of contract terms . . . ."), and our recognition in Conner that an express-false-certification claim can arise from "any false statement that relates to a claim," Conner, 543 F.3d at 1217. We decline to read this language in Conner as exclusive, i.e., the only way to raise an express-false-certification claim, and thus find that requirements of Rule 12(b)(6) have been satisfied.

B.      Rule 9(b)

Though Plaintiffs have stated legally sufficient claims, they were also required to comply with Rule 9(b). The district court found that they did not.

---

[5]  See Aplee. Br. at 30 (quoting Conner, 543 F.3d at 1217); see also Aplt. App. at 459 (citing contractual provisions requiring compliance with all contractual requirements in order to ensure full payment).

Rule 9(b) joins with 8(a) to form the general pleading requirements for claims under the FCA. See, e.g., United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006) (requiring compliance with 9(b) in pleading claims under the FCA); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2004 & Supp. 2010) (collecting cases for the proposition that it is "[o]f primary importance in understanding the requirement of Federal Rule 9(b)" to recognize that "it does not render the general principles of simplicity set forth in Rule 8 entirely inapplicable to pleadings alleging fraud . . . ."). Rule 8(a)'s mandate, that plaintiffs provide a "short and plain statement of the claim showing that the pleader is entitled to relief," has been incorporated into both the 9(b) and 12(b)(6) inquiries. See id.; see also Twombly, 550 U.S. at 554-56; Iqbal, 129 S. Ct. at 1949-51.

Rule 9(b) supplements 8(a) in setting forth the pleading requirements under the FCA. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our pre-Twombly cases required plaintiffs pursuing claims under the FCA to plead the "who, what, when, where and how of the alleged [claim]." Sikkenga, 472 F.3d at 727. This language has been read to require plaintiffs to identify the time, place, content, and consequences of the fraudulent conduct. See, e.g., Koch,

203 F.3d at 1236 (quoting Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)).  Though Twombly and Iqbal clarified 9(b)'s requirements, the Rule's purpose remains unaltered.  Namely, "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ."  Id. (quoting Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir. 1992)); see also 5A Wright & Miller § 1298 (collecting cases in support of the proposition that "the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading.").  Thus, claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.  See, e.g., United States ex rel. Duxbury v. Ortho Biotech Prods., 579 F.3d 13, 29 (1st Cir. 2009); United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854-55 (7th Cir. 2009); United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009).

Plaintiffs' FCA claims complied with the Koch standard by providing factual allegations regarding the who, what, when, where and how of the alleged claims.  With regard to the *who*, Plaintiffs alleged the names and positions of Envirocare employees who observed the contract-and-regulation-breaching activity, the names of the Envirocare supervisors to whom they reported, and the

names of the Envirocare employees responsible for submitting the false claims to the Government.  Aplt. App. at 452-54, 463-65, 468-74, 479-86.  Addressing the *what,* Plaintiffs alleged a series of contractual and regulatory breaches, pointing to specific obligations that Envirocare breached.  Id. at 455-62, 466-86.  For contractual violations, Plaintiffs listed the contracts that were purportedly violated.  Id. at 455-56.  They also listed payment requests submitted, including the date of submission, the amount sought, and where applicable the language of the express certification contained in each request.  Id. at 456-57.  In pleading the *when,* Plaintiffs documented the dates on which specific violations took place and the dates on which payment requests were submitted.  Id. at 456-57, 468-73, 477-86.  For the *where*, Plaintiffs provided the location of the waste disposal site for the alleged violations—including, at times, the specific site area where the violations occurred.  See, e.g., id. at 468-73, 477-86.  Finally, with regard to the *how,* Plaintiffs included extensive factual detail regarding how the violations occurred, adding, in many instances, the conduct that led to the violation, the reason the result constituted a violation, and a description of the effect of the violation.  Id.  Plaintiffs also offered a detailed description of Envirocare's alleged efforts to conceal the violations, including, for example, the names of the Envirocare supervisors who instructed one Plaintiff to stop documenting violations.  Id. at 464-65, 471-73, 475-85.

By providing these factual allegations in a clear, organized, and relatively

concise manner, Plaintiffs' FCA claims appear to have complied with both the heightened pleading requirements of Rule 9(b) and the general requirements of Rule 8(a).

Envirocare expends little new effort in arguing for Rule 9(b) dismissal and instead relies primarily on contentions made in its Rule 12(b)(6) arguments. Where it addresses Rule 9(b) directly, Envirocare relies on the district court's dismissal of the second amended complaint and Plaintiffs' admissions in oral argument before the district court in faulting Plaintiffs for not providing the "what and how," which Envirocare characterizes as "the actual presentment of a false claim for payment to . . . the treasury." Aplee. Br. at 33-34. As support, Envirocare points to Plaintiffs' allegations regarding the volume of purported violations (and claims) under the FCA and Plaintiffs' admission that "relators sometimes cannot match an act constituting a false claim to a specific payment request." Id. at 35-40. Envirocare supplements this argument by highlighting examples of the virtually infinite number of questions that Plaintiffs' third amended complaint does not—and is not required to—answer. Id. at 36-37. At times, in advancing its argument, Envirocare simply ignores the content of Plaintiffs' allegations. Compare, e.g., id. at 37 ("[Plaintiffs' allegations] do not state what specific certification was submitted with what payment request . . . .") with Aplt. App. at 462 ("Envirocare periodically submitted requests for payment to the Corps of Engineers for services allegedly provided under the Contracts. In

each request, Envirocare expressly certified that the payments requested were only for work performed in accordance with the specifications, terms, and conditions of the contract . . . .") (third amended complaint).

In so arguing, Envirocare seeks to hold Plaintiffs to a higher standard than is required. The federal rules do not require a plaintiff to provide a factual basis for every allegation. Nor must every allegation, taken in isolation, contain all the necessary information. Rather, to avoid dismissal under Rules 9(b) and 8(a), plaintiffs need only show that, taken as a whole, a complaint entitles them to relief. See, e.g., Twombly, 550 U.S. at 554-56. The complaint must provide enough information to describe a fraudulent scheme to support a plausible inference that false claims were submitted. Because Plaintiffs have provided sufficient factual detail to demonstrate the viability of their FCA claims, the dismissal under Rule 9(b) was error.

REVERSED.