**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. MARK TROXLER, | |
| Plaintiff - Appellant, | |
| v. | No. 14-5144 |
| | (D.C. No. 4:11-CV-00808-TCK-FHM) |
| WARREN CLINIC, INC.; SAINT FRANCIS HEALTH SYSTEM, INC., | (N.D. Okla.) |
| Defendants - Appellees. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Mark Troxler brought this suit under the False Claims Act ("FCA"), 31 U.S.C.

§§ 3729, 3730, alleging that defendants Warren Clinic, Inc. and Saint Francis Health

System, Inc. (collectively "clinic") were fraudulently billing the government for

services provided by non-physicians. The district court dismissed the suit under

Federal Rule of Civil Procedure 12(b)(6), and exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Dr. Troxler worked at the clinic from March 2010 through February 2011. He alleged that during that time, he observed and protested the clinic's practice of having nurses and medical assistants collect patients' "History of Present Illness" or "HPI." Aplt. App., Vol. 1 at 6. Dr. Troxler averred that HPI information is necessary to select the proper billing code for "evaluation and management" or "E/M" services and must be supported by a physician's documentation. *Id.* at 10-11. He further alleged that by having non-physicians collect and document HPI information, the clinic was fraudulently obtaining reimbursements from federal and state Medicare and Medicaid programs. Dr. Troxler therefore brought this suit on behalf of the government under the FCA's qui tam provisions, claiming the clinic was knowingly presenting false or fraudulent claims to the government for payment, and knowingly making or using false records to obtain payment for false or fraudulent claims. *See* 31 U.S.C. § 3729(a)(1)(A), (B).[1]

The district court dismissed the suit under Rule 12(b)(6).[2] The court first described the FCA's statutory framework, which "'recognizes two types of actionable claims—factually false claims and legally false claims.'" Aplt. App.,

---

[1] An individual may prosecute such claims on behalf of the government under the FCA's qui tam provisions and share in any recovery. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010) (citing 31 U.S.C. § 3730(b), (d)).

[2] The district court did not reach the clinic's alternative argument that the complaint was subject to dismissal under Federal Rule of Civil Procedure 9(b) for failure to plead the claims with particularity. Our disposition obviates any need to consider this issue.

Vol. 2 at 220 (quoting *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008)).[3]  Factually false claims, the court explained, are those in which "'the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Id.* at 221 (quoting *Conner*, 543 F.3d at 1217).

The court determined the complaint failed to plead a factually false claim because Dr. Troxler did not allege that anything in the clinic's claim forms was false, nor did he dispute that the services were actually provided.  Moreover, he did not allege that the clinic failed to document HPI information or that the E/M billing codes were incorrect; rather, he merely alleged that the nurses and medical assistants who obtained HPI information were unqualified to do so.  But because the complaint did not allege the clinic was obligated to identify who collected the HPI information, the court concluded the complaint failed to state a factually false claim.

As for legally false FCA claims, the district court explained they may be either express or implied and "require the relator to prove that 'the defendant has certified compliance with a statute or regulation as a condition to government payment, yet

---

[3] The relevant provisions of the FCA provide for civil penalties and treble damages against a defendant who "(A) knowingly presents or causes to be presented, a false or fraudulent claim for payment of approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]"  31 U.S.C. § 3729(a)(1).  The scienter element is established if the defendant has "(i) actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information," although "no proof of specific intent to defraud" is required.  *Id.* § 3729(b)(1); *see U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 945 & n.12 (10th Cir. 2008).

knowingly failed to comply with such statute or regulation.'" *Id.* (quoting *Conner*, 543 F.3d at 1217). The court recognized that an express false certification claim arises when "'a [defendant] falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Id.* at 221-22 (quoting *Conner*, 543 F.3d at 1217). But an implied false certification claim "requires only the presentation of a false or fraudulent claim for payment or approval without the additional . . . requirement of a false record or statement." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010) (internal quotation marks omitted). When analyzing these implied false certification claims, the focus is "'on the underlying contracts, statutes, or regulations . . . to ascertain whether they make compliance a prerequisite to the government's payment.'" Aplt. App., Vol. 2 at 222 (quoting *Conner*, 543 F.3d at 1218).

The district court concluded that the complaint failed to allege either an express or an implied false certification claim. An express false certification theory failed, the court ruled, because there were no allegations that the clinic certified its compliance with any legally binding authority. A single paragraph in the complaint alleged the clinic "repeatedly and falsely certified their continued compliance with Medicare guidelines while knowingly rendering services not in compliance with Medicare guidelines and while knowingly submitting false records or statements for payment related to such services rendered." Aplt. App., Vol. 1 at 20, ¶ 47. But this conclusory statement, the court held, failed to identify any statement or certification

4

of compliance with any legally binding authority. Although Dr. Troxler cited a provision of the Department of Health and Human Services' *Evaluation and Management Services Guide*, the district court determined this document had no legally binding effect and even if it did, there was no indication in the complaint how the clinic certified its compliance with it.[4] Apart from that, the court noted that Dr. Troxler did not identify any false certification premised on the requirements of a statute, regulation, or contract. This was fatal to his theory of an implied false certification, the court explained, because without an underlying statute, regulation, or contract, there was no authority to make compliance a prerequisite to the government's payment.

## II

We review the district court's dismissal de novo, *Lemmon*, 614 F.3d at 1167, and agree that Dr. Troxler failed to plead a plausible FCA claim. The complaint fails to state a factually false claim because there are no allegations that the clinic submitted anything false to the government or that the services were not actually provided. Dr. Troxler suggests the reimbursement requests were false because only physicians can certify whether services are medically necessary, *see* Aplt. Br. at 17 ("reimbursements . . . are made only for services that are medically necessary" and

---

[4] The "Medicare guidelines" that Dr. Troxler referenced in his complaint are the *1997 Documentation Guidelines for Evaluation and Management Services, see Aplt. App.*, Vol. 1 at 10 ¶17, 20 ¶ 47, which are appended to and appear to be part of the *Evaluation and Management Services Guide, see id.* at 57-145. The clinic attached these materials to its motion to dismiss, and the parties do not dispute their authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

are inappropriate "when a physician's documentation fails to support the medical necessity of a[n] . . . E/M service"), but there are no allegations that the services were unnecessary. Rather, the complaint alleges that HPI information was collected by unqualified personnel. But as the district court recognized, absent allegations that the clinic was required to identify who collected HPI information, the complaint fails to state a factually false claim.

Likewise, the complaint fails to state a legally false claim. There are no allegations to support an express false certification theory because the complaint does not identify any expressly false certification or statement. Nor does the complaint identify a statute, regulation, or contract requiring that only physicians collect HPI information as a prerequisite to payment. This deficiency defeats an implied false certification theory because without an underlying legal authority to make compliance a prerequisite to payment, there can be no false certification. *See Conner*, 543 F.3d at 1218. Although Dr. Troxler alludes to the *1997 Documentation Guidelines for Evaluation and Management Services*, Aplt. App., Vol. 1 at 96; Aplt. Br. at 22, he does not allege—and we find no indication—that these guidelines legally mandate and condition payment of services on a health-care provider's certification that HPI information was collected exclusively by physicians. Moreover, without a statutory, regulatory, or contractual obligation to make this certification, it is implausible that the allegations satisfy the scienter requirement because there was nothing with which the clinic could have knowingly certified its

6

false compliance.[5]  Under these circumstances, the district court correctly dismissed the complaint.

Accordingly, having reviewed the parties' appellate materials, the relevant legal authorities, and the record on appeal, we affirm the district court's judgment for substantially the same reasons stated by the district court in its decision dated November 5, 2014.

Entered for the Court


Gregory A. Phillips
Circuit Judge

---

[5] Dr. Troxler reiterates his argument that a provision of the *Evaluation and Management Services Guide* allows "ancillary staff" to collect and document certain information.  Aplt. App., Vol. 1 at 70.  He insists that this expressly enumerated allowance for non-physicians to collect specific information must mean that other information, including HPI information, can only be collected by physicians.  But even if we could read this negative inference from the omission of language in the *Evaluation and Management Services Guide* (which we do not), the district court correctly recognized that this guide is not legally binding.  Indeed, it expressly says that it is merely a "reference tool" and "is not a legal document and does not grant rights or impose obligations."  *Id.* at 58.