FILED
United States Court of Appeals
Tenth Circuit

May 10, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA EX REL. MICHELE COFFMAN, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> THE CITY OF LEAVENWORTH, KANSAS, <br><br> Defendant - Appellee. | No. 18-3156 <br> (D.C. No. 2:14-CV-02538-JAR) <br> (D. Kan.) |

_____

**ORDER**
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Appellant has submitted a petition for panel rehearing. Upon consideration, the panel grants the petition to the extent of the modifications contained in the attached revised order and judgment. The order and judgment filed on March 29, 2019, is hereby withdrawn, and shall be replaced by the attached revised order and judgment effective the date of this order. The Clerk is directed to file the attached revised order and judgment forthwith.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 10, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE UNITED STATES OF AMERICA
EX REL. MICHELE COFFMAN,

     Plaintiff - Appellant,

v.

THE CITY OF LEAVENWORTH,
KANSAS,

     Defendant - Appellee.

No. 18-3156
(D.C. No. 2:14-CV-02538-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Michele Coffman appeals the district court's grant of summary judgment in

favor of the City of Leavenworth, Kansas, on her claims under the False Claims Act

(FCA), 31 U.S.C. §§ 3729-33.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Coffman was employed between 2010 and 2013 at the City's wastewater treatment plant (WWTP).  In 2014, she brought a *qui tam* action against the City under the FCA.[1]  The district court granted summary judgment in the City's favor.  She addresses on appeal only her FCA claims alleging that the City fraudulently billed three federal agencies for sewer service.

Coffman claims that the City submitted monthly sewer bills to the United States Army, the Bureau of Prisons, and the Veterans Administration that falsely implied that the City had complied with all applicable environmental laws.  She claims that the City's certification of compliance was false because it had violated environmental laws in four specific ways:

(1) the City allowed sewage to leak into a creek from a broken sewer pipe that it did not repair for 15 months, allegedly in violation of the Clean Water Act (CWA) and the City's discharge permit (NPDES permit[2]);

---

[1] Coffman asserted additional claims against the City, including FCA retaliation and state-law claims for whistle blower retaliation, retaliatory discharge, and negligent infliction of emotional distress.  These claims are not at issue in this appeal.

[2] Pollutant dischargers can obtain a permit through the National Pollutant Discharge Elimination System (NPDES) permit program, administered by the EPA and authorized states.  *See* 33 U.S.C. § 1342(a)-(b).  "Noncompliance with a permit constitutes a violation of the [CWA]."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).  The EPA delegated to the Kansas Department of Health and Environment (KDHE) the authority to regulate wastewater discharge in the state of Kansas.

(2) the City discharged treated effluent into the same creek to improve its smell and color during the period that the broken sewer pipe was leaking, also allegedly in violation of the CWA and its NPDES permit;

(3) the City used a "Vactor Truck" (an industrial truck equipped with a vacuum) to clear out objects from the sewer system, after which it dumped the solid contents of the truck onto the ground in an area behind the WWTP, allegedly in violation of a federal regulation; and

(4) per a consent order issued in December 2015, the EPA found that between March 2010 and March 2014 the City had violated its NPDES permit by discharging pollutants at non-permitted locations due to sanitary sewer overflows. There is no dispute that the City did not inform its federal agency sewer customers of any of these issues.

The district court held that Coffman failed to present evidence that would lead a reasonable trier of fact to find that any of the implied false certifications were material to the federal agencies' decisions to pay their monthly invoices for wastewater treatment services. The court also concluded that Coffman failed to present evidence that the invoices were submitted with the requisite scienter under the FCA.

## II.     Discussion

We review the district court's grant of summary judgment de novo. *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016). Summary judgment is appropriate "if the movant shows that there

3

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the factual record and draw all reasonable inferences in Coffman's favor. *See Thomas*, 820 F.3d at 1168.

**A.**

The FCA imposes liability when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Coffman's complaint alleged that the City made legally false requests for payment. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010) ("Claims arising from legally false requests . . . generally require knowingly false certification of compliance with a regulation or contractual provision . . . ."). And she relied on an implied false certification theory of liability. *See id.*; *see also Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016) (holding that, "at least in certain circumstances, the implied false certification theory can be a basis for liability"). "According to this theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment." *Escobar*, 136 S. Ct. at 1995.

An FCA claim must satisfy materiality and scienter requirements, both of which are "rigorous" and strictly enforced. *Id.* at 2002. Here, the district court held that Coffman failed to show a material factual dispute as to either materiality or scienter. Regarding scienter, Coffman was required to prove that the City "knowingly" presented a false claim to the government for payment or approval. § 3729(a)(1)(A). "[K]nowingly . . . mean[s] that a person, with respect to

4

information": (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." § 3729(b)(1)(A) (internal quotation marks omitted).[3]

Accordingly, "[t]he proper focus of the scienter inquiry under § 3729(a) must always rest on the defendant's 'knowledge' of whether the claim is false . . . ." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 952-53 (10th Cir. 2008). Coffman "must show more than a falsehood—[she] must show that [the City] *knowingly* presented a false claim for payment." *U.S. ex rel. Smith v. The Boeing Co.*, 825 F.3d 1138, 1149 (10th Cir. 2016). And Coffman "must prove scienter as an element; it cannot be presumed." *Burlbaw*, 548 F.3d at 955.

**B.**

In her opening appeal brief, Coffman asserts that she has shown, elsewhere in her brief, that "the City did not comply with environmental laws in numerous instances." Aplt. Opening Br. at 53. She argues that "the fact that environmental compliance was the very essence of the contracts for wastewater treatment can establish scienter that environmental compliance *was material* [to the City's federal agency sewer service customers]." *Id.* at 54 (emphasis added). To establish scienter regarding the falsity of the City's claims for payment, Coffman maintains that "[s]cienter can be found within a corporate entity even if there is not a single

_____

[3] Subsequent uses of the term "knowingly," and derivations of that term, assume the full statutory definition.

individual responsible for both compliance and contracting issues." *Id.* at 51. She contends that, because the City's organizational structure prevented it from learning the facts that made its claims for payment false, the City therefore acted in deliberate ignorance or reckless disregard of the falsity of its invoices submitted to the federal agencies. *Id.* at 52.

For this proposition, Coffman cites *United States v. Science Applications International Corp.*, 626 F.3d 1257, 1275-76 (D.C. Cir. 2010) (*SAIC*), in which our sister circuit held that "[u]nder the FCA, if a plaintiff can prove that a government contractor's structure prevented it from learning facts that made its claims for payment false, then the plaintiff may establish that the company acted in deliberate ignorance or reckless disregard of the truth of its claims." The court reached this holding in the context of rejecting the government's contention that scienter can be based on a "collective knowledge" theory and remanding for a new trial due to an erroneous scienter instruction. *See id.* at 1273-77. In particular, the court stated that Congress adopted the definition of "knowingly" in the FCA to include deliberate ignorance or reckless disregard "to capture the ostrich-like conduct which can occur in large corporations where corporate officers insulate themselves from knowledge of false claims submitted by lower-level subordinates." *Id.* at 1274 (ellipsis and internal quotation marks omitted). Thus, the definition of "knowingly" is meant to address the "compartmentalization problem," where corporations "evad[e] liability by compartmentalizing knowledge, subdividing the elements of specific duties and

6

operations into smaller components." *Id*. at 1275 (brackets and internal quotation marks omitted).

Coffman asserts that the City has the kind of compartmentalized structure described in *SAIC*. She supports this assertion with three facts: First, the City's WWTP operators are not responsible for submitting invoices to the federal agencies. (Although Coffman does not cite any evidence supporting this factual assertion, there appears to be no dispute that this is the case). Second, the City's finance director testified that the City submitted invoices to the Army based on that agency's flow level and its portion of the operation and maintenance costs. Aplt. Opening Br. at 52 (citing Aplt. App., Vol. IV at 1025). Third, Coffman contends there is no evidence that the City's finance employees inquired of WWTP employees regarding compliance with environmental laws before submitting invoices.

Accepting the court's reasoning in *SAIC* for purposes of Coffman's contention, these facts alone do not show that the City's organizational structure *prevented it* from learning the facts that made its claims for payment false. The finance director's testimony regarding how the Army's bills were calculated is not probative of the information her department had about the City's environmental compliance at the times the bills were submitted. Nor does a lack of affirmative inquiry by finance employees demonstrate an organizational structure that *prevented* the City from learning the relevant facts. Indeed, the City has cited evidence that its public works director was involved with both the events at the WWTP and the City's obligations under the federal contracts. *See* Aplt. App., Vol. II at 276-78. Coffman has not

7

pointed to evidence demonstrating that the City's organizational structure did not allow it to determine the falsity of its claims for payment.

Moreover, the City argues that it "has never contended that it lacks scienter because its finance department, which submits the invoices to the City's federal sewage customers, lacked knowledge of any underlying NPDES permit violation." Aplee. Br. at 43. Thus, Coffman's "compartmentalization" contention is ultimately a straw man argument that fails to satisfy her burden to demonstrate scienter.

Coffman concludes her scienter discussion by asserting that, "because the City had the requisite scienter as to materiality while failing to make even basic inquiries about whether the City was in compliance with environmental obligations before creating each invoice, the City acted with deliberate ignorance or reckless disregard for the truth (scienter) when submitting 'knowingly false' monthly claims to federal agencies." Aplt. Opening Br. at 55. For this duty of "diligent inquiry" proposition, Coffman cites the district court's decision on remand from *SAIC*. *See* Aplt. Opening Br. at 52 (citing *U.S. v. Science Applications Int'l Corp.*, 958 F. Supp. 2d 53, 69-70 (D.D.C. 2013) (*SAIC DDC*)).

In *SAIC DDC*, the district court read the D.C. Circuit's decision as "limit[ing] the theories an FCA plaintiff can use to prove that a defendant had constructive knowledge that its claims or statements were false" to a "show[ing] that the organization's structure or processes prevented one employee from learning of the falsity of the claim." *SAIC DDC*, 958 F. Supp. 2d at 69 & n.8. Consequently, the government contended that SAIC's compliance system "prevented [it] from

8

determining the truth or falsity of its claims or statements." *Id.* at 69. And the district court held that "there is sufficient evidence for a jury to find that SAIC's compliance system did not allow SAIC to determine the truth or falsity of its claims or statements." *Id.* at 70.

Thus, *SAIC DDC* applied *SAIC*'s "compartmentalization" analysis. And we have already rejected that contention with regard to the City's organizational structure. *SAIC DDC* does not support Coffman's contention that the City's knowledge of materiality, combined with a failure to inquire, is sufficient to establish scienter. We need not address a contention not supported by relevant authority. *See* Fed. R. Civ. P. 28(a)(8)(A) (requiring appellant's argument to contain citations to authorities); *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970) ("[The appellant's] citation of but one authority, and that of no pertinence, suggests either that there is no authority to sustain its position or that it expects the court to do its research.").

## C.

Coffman does not address in her opening brief whether, assuming there were environmental violations, there is evidence that the City submitted claims for payment to the federal agencies when WWTP employees knew of (or were deliberately ignorant of or recklessly disregarded) such violations. *See Smith*, 825 F.3d at 1149 (holding that, even assuming products defendant sold to the government failed to comply with federal regulations, the record did not support the relators' contention that defendant knew about the nonconformities when submitting

9

claims for payment).  Coffman omitted any discussion of this issue despite her extensive briefing of it in the district court, *see* Aplt. App., Vol. V at 1110-17.  Although it was her burden to come forward on appeal with her contentions and evidence supporting the scienter element of her FCA claim, she did not raise these same contentions in her opening brief.

"[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."  *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).  "Stated differently, the omission of an issue in an opening brief generally forfeits appellate consideration of that issue."  *Id.* Coffman does address this issue in her reply brief, but that too is insufficient to preserve it for appellate review.  *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."); *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009) ("The same rationale applies when the only evidence supporting a claim is not cited until the reply brief.").  Although Coffman responds in her reply brief to the City's contention that WWTP employees lacked knowledge of environmental violations caused by the bypass events and the Vactor Truck procedures, her failure to address this issue in her opening brief deprived the City— as the appellee—of the opportunity to respond to her belated factual assertions and arguments.  *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) ("[T]o allow an appellant to raise new arguments at this juncture would be manifestly unfair to the appellee who, under our rules, has no opportunity for a

10

written response." (internal quotation marks omitted)). We see no compelling reason in this case to deviate from the rule that contentions not raised in an opening brief are forfeited.[4]

Coffman's FCA claims required her to prove scienter. We have addressed the contentions that she sufficiently raised on appeal. She does not demonstrate error in the district court's holding that she failed to present evidence that would lead a reasonable trier of fact to find that the City submitted invoices to the federal agencies with the requisite scienter. We therefore affirm the district court's grant of summary judgment in favor of the City on Coffman's FCA claims.

## III. Conclusion

The district court's judgment is affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[4] We have sometimes considered arguments raised for the first time in a reply brief because the appellant was responding to a contention raised in the appellee's brief. *See, e.g., Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994). The circumstances in this case are distinguishable.