FILED
United States Court of Appeals
Tenth Circuit

**September 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA ex rel. KELLY E. SORENSON,

      Plaintiff - Appellant,

    v.

WADSWORTH BROTHERS CONSTRUCTION COMPANY, INC.,

      Defendant - Appellee.

No. 21-4005

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-00875-CW)**

---

Russell T. Monahan, Cook & Monahan, LLC, Salt Lake City, Utah, for Plaintiff-Appellant.

Wilford A. Beesley, III (Jonathan T. Tichy with him on the brief), Wilford Beesley, P.C., Salt Lake City, Utah, for Defendant-Appellee.

---

Before **BACHARACH**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Kelly Sorenson, acting as a qui tam relator, brought suit on behalf of the United States against his former employer, Wadsworth Brothers Construction Company ("Wadsworth"), under the provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.  Sorenson alleged Wadsworth, a contractor working on a federally funded transportation project, falsely certified its compliance with the prevailing-wage requirements of the Davis-Bacon Act, 40 U.S.C. §§ 3141-48. The district court granted Wadsworth's Fed. R. Civ. P. 12(b)(6) motion as to the following claims in Sorenson's complaint: (1) Claim 1, alleging Wadsworth presented to the government a false claim, *see* 31 U.S.C. § 3729(a)(1)(A); (2) Claim 2, alleging the use or making of a false record to obtain payment on a false claim, *see id.* § 3729(a)(1)(B); and (3) Claim 3, alleging a conspiracy to defraud, *see id.* § 3729(a)(1)(C).[1]  The district court concluded Sorenson's complaint failed to satisfy the demanding materiality standard set out by the Supreme Court in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192–96 (2016).  Thereafter, the district court granted summary judgment to Wadsworth on Sorenson's Claim 5, a retaliation claim based on the whistleblower provisions of 31 U.S.C. § 3730(h).  The district court

---

[1]The complaint also included a Claim 4, alleging Wadsworth made a false receipt with the intent to defraud the government.  *See* 31 U.S.C. § 3729(a)(1)(E). Sorenson conceded Wadsworth's motion to dismiss Claim 4, and the validity of that claim is not before this court on appeal.

concluded Sorenson failed to put Wadsworth on notice his protected activities were related to purported violations of the FCA and, in addition, failed to demonstrate Wadsworth's actions were retaliatory.

Sorenson appeals the dismissal of Claims 1, 2, and 3 and the grant of summary judgment to Wadsworth on Claim 5. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the orders of the district court.[2]

## II. DISCUSSION

### A. The Rule 12(b)(6) Issues

#### 1. Background

##### a. Statutory Background

###### I. The FCA

The FCA imposes liability for "fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736 (10th Cir. 2019) (quotation omitted). It permits the recovery of civil penalties and treble damages from anyone who, inter alia, (1) "knowingly

---

[2]Sorenson also challenged a district court order awarding Wadsworth its attorney's fees. This court ordered Sorenson to show cause why this aspect of his appeal should not be dismissed for lack of jurisdiction because he failed to file a separate notice of appeal after the district court entered a final order setting the amount of fees. *See Art Janpol Volkswagen, Inc. v. Fiat Motors of N. Am., Inc.*, 767 F.2d 690, 697 (10th Cir. 1985). Sorenson conceded this court "lacks jurisdiction with regard to the issue of attorney's fees." Given this well-taken concession, we **dismiss** for lack of jurisdiction Sorenson's challenge to the district court's award of attorney's fees in Wadsworth's favor.

presents . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B). The FCA also imposes liability on anyone who "conspires to commit a violation" of the provisions of § 3729(a)(1). *Id.* § 3729(a)(1)(C). Falling within the umbrella of liability created by § 3729(a)(1) are "false certifications." *Universal Health*, 579 U.S. at 180–81, 186–87. A false claim within the meaning of § 3729(a)(1) can be either factually false or legally false. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 741 (10th Cir. 2018). This case involves allegations of legal falsity. Legally false requests for reimbursement "generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment." *Id.*

The FCA's provisions can be enforced in two ways. "[T]he [g]overnment itself may sue the alleged false claimant to remedy the fraud." *Reed*, 923 F.3d at 736 (quotation omitted); *see also* 31 U.S.C. § 3730(a). Alternatively, "a private person (the relator) may bring a qui tam suit on behalf of the government and also for herself alleging that a third party made fraudulent claims for payment to the government. As a bounty for identifying and prosecuting fraud, relators get to keep a portion of any recovery they obtain." *Reed*, 923 F.3d at 736 (quotations omitted); *see also* 31 U.S.C. § 3730(b), (d).

-4-

Importantly, the liability imposed by § 3729(a)(1) is predicated on a "rigorous" materiality requirement. *Universal Health Servs.* 579 U.S. at 192. "A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." *Id.* And, the mere fact "the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment" is not enough, standing alone, to render a misrepresentation material. *Id.* at 194. Likewise, the mere fact the government could opt not to pay if it knew about a defendant's noncompliance does not, in itself, establish materiality. *Id.* And, "minor or insubstantial" noncompliance with statutory, regulatory, or contractual requirements is immaterial. *Id.*

> In sum, when evaluating materiality under the [FCA], the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 194–95 (footnote omitted).

-5-

### ii. The Davis-Bacon Act

The Davis-Bacon Act governs federally funded construction contracts. *Int'l Bhd. of Elec. Workers, Local 113 v. T & H Servs.*, 8 F.4th 950, 953 (10th Cir. 2021). It is "a minimum wage law designed for the benefit of construction workers." *United States v. Binghamton Constr. Co.*, 347 U.S. 171, 178 (1954). The Act protects "local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area" where the work is to be done. *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 773–74 (1981) (quotation omitted); *see T & H Servs.*, 8 F.4th at 953 (citing 40 U.S.C. § 3142). It requires contractors on most federally funded building projects to pay employees minimum wages based on the Department of Labor's ("DOL") determination of prevailing wages "for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3142(b).[3] Notably, payment of Davis-Bacon wages is jobsite and task specific, not project related. The Act mandates payment of Davis-Bacon wages only to "mechanics and laborers employed directly on the site of the work." *Id.* at

---

[3]The DOL "has a robust system authorized by the Davis-Bacon Act and DOL regulations promulgated thereunder for determining job classifications for Davis-Bacon work and resolving disputes over classifications." *T & H Servs.*, 8 F.4th at 953 (citing, inter alia, 29 C.F.R. Parts 1, 5–7). The entire process of establishing Davis-Bacon minimum wages is described in detail in *T & H Servs.*, 8 F.4th at 953–56.

§ 3142(c)(1).  The applicable regulation defines the term "site of work" as "the physical place or places where the building or work called for in the contract will remain; and any other site where a significant portion of the building or work is constructed, provided that such site is established specifically for the performance of the contract or project."  29 C.F.R. § 5.2(1)(l).  Because the applicable statutory and regulatory provisions focus on the jobsite, work that is only tangentially related to the site is not covered by the prevailing-wage requirement.  *See, e.g.*, 29 C.F.R. § 5.2(j)(2) ("[T]he transportation of materials or supplies to or from the site of the work by employees of the . . . contractor . . . is not" covered by the statutory requirement to pay Davis-Bacon wages).

This court has noted the "elaborate administrative scheme" created by the Davis-Bacon Act and its implementing regulations "is meant to provide consistency and uniformity" in "the administration and enforcement of the . . . Act, and balances the interests of contractors and their employees."  *T & H Servs.*, 8 F.4th at 957 (quotation omitted).[4]

---

[4]As explained in *T & H Servs.*, DOL calculates Davis-Bacon wages based on two components: prevailing-wage determinations made by the DOL and worker-category determinations made by a contracting officer.  8 F.4th at 953–54.  To balance the interest of contractors and employees, category determinations must generally be challenged in administrative proceedings before the contract is awarded.  *See id.* at 954.  At least two courts have concluded that FCA claims involving alleged Davis-Bacon misclassifications, as opposed to other kinds of alleged Davis-Bacon misrepresentations, might implicate the primary jurisdiction doctrine.  *See United States ex rel. Sheet Metal Workers Int'l Assoc. v. Horning*

(continued...)

Enforcement of the Davis-Bacon Act is the responsibility of both the contracting agency and the DOL. Employees can submit complaints regarding alleged violations of the Davis-Bacon Act to the contracting officer, who can investigate and take action against an offending contractor, and refer disputes to the DOL. . . . The procedures by which the DOL resolves such disputes, which are set forth in 29 C.F.R. § 5.11, include notification of the affected parties by the Administrator of the DOL Wage and Hour Division, potential referral to an administrative law judge for factfinding, and eventual appeal of Administrator decisions to the [administrative review board].

*Id.* at 956-57 (citations and footnotes omitted).[5] Enforcement and transparency are also furthered by requirements that (1) DOL promulgate regulations mandating "that each contractor and subcontractor each week must furnish a statement on the wages paid each employee during the prior week," 40 U.S.C. § 3145; and (2) contractors submit to the contracting agency weekly payrolls

---

[4](...continued)
*Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016) (noting doctrine of primary jurisdiction might come into play when a Davis-Bacon claim is based on misclassification); *United States ex rel. Wall v. Circle C Constr., LLC*, 697 F.3d 345, 354 (6th Cir. 2012) (same). *But cf. United States ex rel. Int'l Bhd. of Elec. Workers v. Farfield Co.*, 5 F.4th 315, 322 (3d Cir. 2021) (considering a Davis-Bacon misclassification claim without considering the issue of primary jurisdiction).

[5]Although not determinative of the issues on appeal, Sorenson used this very administrative scheme. He sought payment of additional wages in administrative proceedings before the Utah Labor Commission. The Commission determined Wadsworth underpaid Sorenson $2581.62 in Davis-Bacon wages. On Wadsworth's appeal, however, a Utah state court set aside the Labor Commission's conclusions and found that Wadsworth's "timecards and timecard coding" accurately reflected the amount of work Sorenson undertook on Davis-Bacon jobsites.

along with a certification that those payrolls comply with the requirements of the Act, 29 C.F.R. § 5.5(a)(3)(ii).

Violations of the Act "can result in withheld payments, contract termination, and debarment." *T & H Servs.*, 8 F.4th at 956 (citing 40 U.S.C. §§ 3142–44; 29 C.F.R. §§ 5.9, 5.12; 48 C.F.R. §§ 22.406–9, 22.406–11). "If withheld sums are insufficient to adequately compensate employees who have been underpaid, the Act also creates a limited right of action for employees to sue on the 'payment bond' that government contractors must post for 'the protection' of workers." *Id.* (citing, inter alia, 40 U.S.C. § 3144(a)(2)).

### b.  Factual Background

The following factual allegations (as opposed to "legal conclusions," "naked assertions," or "conclusory statements") set out in Sorenson's complaint are taken as true for purposes of analyzing the propriety of the district court's grant of Wadsworth's Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

### I.  Factual Allegations re violations of Davis-Bacon

In 2012, Salt Lake International Airport (the "Airport") received a nine million dollar federal grant for improvements. Using those federal funds, the Airport solicited bids for construction of a deicing pad. Consistent with a condition of the grant, the Airport required that contractors awarded the contract certify employees were paid in compliance with the Davis-Bacon Act. This

information was contained in the bid-solicitation documents.  Wadsworth was the low bidder on the project, and it and the Airport entered into a contract.

Wadsworth began construction work on the deicing project in early 2013 and employed Sorenson as a truck driver from September 1, 2014 until November 14, 2014.  On each day Sorenson "worked on the [d]eicing project, [he] was required to swipe his work identity badge into the security system of the Airport to obtain access to the Airport property."  In addition to his regular rate of pay, Sorenson was entitled to an additional $10.53 per regular hour worked on the Davis-Bacon jobsite.  Almost immediately after being employed by Wadsworth, Sorenson noticed discrepancies in his pay.  He spent approximately three days working on another "federally funded" highway project during this time frame.  Although employed exclusively on the "federally funded" projects, Sorenson's pay reflected substantial work on non-Davis-Bacon jobsites.  Wadsworth employees, on and off of the deicing project, told Sorenson it was a standard practice for Wadsworth to shave Davis-Bacon time off of "federal projects" and that it did so to undercut other bidders on such projects.

Sorenson learned Wadsworth created time sheets showing he worked jobs outside of the deicing and federal highway projects.  Several time sheets contained Sorenson's forged signature.  Wadsworth also had Sorenson sign time sheets and, after he had done so, would enter jobsite codes that were not previously on the time sheets.  This would make it appear as though Sorenson was

-10-

working off the deicing project site. Indeed, Sorenson's time sheets and pay stubs include entries indicating he was not working at the deicing project; records obtained from the Airport, however, show he swiped into the Airport security system to work.

When Wadsworth paid Sorenson some additional wages due under the Act, the wages were paid as a "Union Benefit." The Union Benefits were then sent by Wadsworth to its "Profit Sharing" plan. The amounts sent to the Profit Sharing plan did not equal the Davis-Bacon wages Sorenson was due. Moreover, the account used by Wadsworth for the Profit Sharing plan is commingled with Wadsworth's general funds. Wadsworth uses Alliance Benefit Group ("Alliance") to administer its Profit Sharing plan. The purpose of using Alliance is to obscure the Davis-Bacon wages actually due Wadsworth's employees to cause confusion amongst those employees.

### ii. Allegations as to Materiality

Certification to the United States of compliance with the Davis-Bacon Act is a prerequisite to Wadsworth's payment under the construction contract. "Wadsworth performed work at the deicing project since the project's inception and, therefore, has submitted invoices to include certified payrolls up the supply chain and, inevitably, to the federal government for expenses including Sorenson's wages, and have been paid in relation to those invoices as a result of the governments reliance on their certifications of Davis-Bacon Act compliance."

To increase its profits, Wadsworth represented to the federal government on each of its invoices involving Sorenson that the wages Wadsworth paid Sorenson complied with the Davis-Bacon Act, and it "possibly" made the same representations regarding other employees' wages as well.  Wadsworth did so despite actually knowing it did not pay Sorenson in accord with applicable Davis-Bacon requirements.  As a result of these misrepresentations, the federal government has been damaged by paying Wadsworth monies Wadsworth was not entitled to receive.

### c.  Procedural Background

The district court dismissed Sorenson's Claims 1, 2, and 3 in a brief order. It determined that *Universal Health Services* directly controlled the disposition of Wadsworth's motion to dismiss.  That was so, the district court concluded, because Sorenson's complaint advanced no basis for a finding of materiality other than "that certification of compliance with the Davis-Bacon Act is a prerequisite to the payment" of Wadsworth's invoices.  *Universal Health Services* specifically held that such an allegation was insufficient to establish materiality.  579 U.S. at 194.  The district court further determined Sorenson's allegations as to Wadsworth's claimed violations of the Davis-Bacon Act were so conclusory that they failed to allege a false or fraudulent act.  *See* Dist. Court Rule 12(b)(6) Order

-12-

at 9 ("[Sorenson's] complaint fails to establish that [Wadsworth] made fraudulent misrepresentations under the FCA.").[6]

### 2. Analysis

#### a. Standard of Review

This court reviews de novo a district court's Rule 12(b)(6) dismissal in a qui tam proceeding. *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). The relevant question is "whether enough facts have been pled to state a plausible claim." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555 (quotations, alterations, and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("Determining

---

[6]Sorenson appears to suggest the import of the district court's language is unclear. *See* Sorenson's Opening Brief at 24 ("The District Court did not expound upon its conclusion about how the Plaintiff's Complaint failed to establish a fraudulent misrepresentation, nor did the District Court determine how the allegations raised in the Plaintiff's Complaint failed to establish the necessary elements under the FCA."). This court disagrees. The meaning of this language is clear on its face. In any event, in an order granting Wadsworth its attorney's fees, the correctness of which is not before this court on appeal, *see supra* n.2, the district court interpreted its own Rule 12(b)(6) order as standing for the proposition that Claims 1, 2, 3, and 4 set out in Sorenson's complaint were so "conclusory" and "unsupported" as to be implausible.

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quotations, alterations, and citation omitted).

### b.  Discussion

This court need not make any grand pronouncements about the general materiality of Davis-Bacon violations to resolve Sorenson's appeal.  Instead, it is enough to note that this particular complaint—bereft of critical facts as to the alleged Davis-Bacon violation and limited to nothing more than a naked assertion that truthful certification of Davis-Bacon compliance is a precondition to payment—fails to state a material misrepresentation for purposes of the FCA.

As should be clear from the recitations set out above, the factual underpinning of the complaint's overarching allegations of Davis-Bacon false certifications could hardly be more limited.  As explained above, payment of Davis-Bacon wages is jobsite and task specific, not project related.  Nevertheless, Sorenson's complaint does not identify the relevant Davis-Bacon jobsite for the deicing project or, for that matter, any other Wadsworth construction project.  He alleges he worked on Airport property and swiped into the Airport security system to work, but the complaint does not identify where at the Airport the deicing pad

-14-

was being constructed, nor does it allege that Sorenson's work was performed at that location. Sorenson's allegation that he worked on the deicing project does not establish that his work occurred at the jobsite for that project. Furthermore, the complaint does not indicate what tasks Sorenson performed for his work, whether at the jobsite or otherwise. The complaint's only allegation regarding the nature of Sorenson's work is the allegation that he worked as a truck driver. Far from establishing Sorenson's entitlement to Davis-Bacon wages, however, this allegation only raises the question whether Sorenson fell within a class of workers outside the coverage of the Act. *See* 29 C.F.R. § 5.2(j)(2) (providing that truck drivers who transport "supplies to or from the site of the work" are generally not covered by the Act). Sorenson's allegations regarding his other work are even more limited. He alleges he worked on a highway project and repeatedly refers to his work, and the work of others, as occurring on "federally funded" projects, but these allegations do not establish either that this work occurred on a Davis-Bacon jobsite or that it involved the type of labor covered by the Davis-Bacon Act,[7] and the complaint is otherwise silent on this point.[8]

---

[7]Indeed, given the record in this case, one could easily surmise, as did the district court when it ordered Sorenson to pay Wadsworth's attorney's fees, that the language used in Sorenson's complaint amounted to an attempt to obscure, rather that elucidate, the underlying facts of the case.

[8]"[FCA] plaintiffs must . . . plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)." *Universal*

(continued...)

At most, Sorenson's complaint arguably supports the inference that Wadsworth failed to pay Sorenson (and some unnamed quantity of other Wadsworth employees whose jobsites and tasks are unclear) an undisclosed quantum of Davis-Bacon wages, then fraudulently certified its compliance with the Act. *See* Dist. Ct. 12(b)(6) Order at 7 (recognizing that, at most, Sorenson's complaint asserted a naked violation of the Davis-Bacon Act by asserting Wadsworth violated § 3729(a)(1)(A) and (B)). The FCA, however, is not simply some "all-purpose antifraud statute or a vehicle for punishing garden-variety

---

[8](...continued)
*Health*, 579 U.S. at 195 n.6. As it relates to claims for fraud under the FCA, Rule 9(b) requires a plaintiff to "show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon*, 614 F.3d at 1172. "Practically speaking, FCA claims comply with Rule 9(b) when they provide factual allegations regarding the who, what, when, where and how of the alleged claims." *Polukoff*, 895 F.3d at 745(quotation and alteration omitted). The district court excused Sorenson from pleading with particularity some technical information exclusively in the control of Wadsworth. *See* Dist. Ct. Rule 12(b)(6) Order at 12 (citing *Polukoff*, 895 F.3d at 745 ("[W]e excuse deficiencies that result from the plaintiff's inability to obtain information within the defendant's exclusive control.")). There is strong reason to doubt the application of the *Polukoff* exception here given that Sorenson extensively litigated the very issues at play in this case in administrative proceedings before the Utah Labor Commission. Even setting aside the question of whether he was excused from pleading certain technical information exclusively in Wadsworth's control, Sorenson identifies no excuse for his failure to set out even minimal details about the tasks he (and unnamed others) undertook while employed by Wadsworth and the location where he (and unnamed others) performed those tasks. *Cf. Lemmon*, 614 F.3d at 1172 (holding that a false certification claim satisfied the requirements of Rules 8(a) and 9(b) based on the complaint's extensive allegations as to the who, what, when, where, and how of the alleged false certifications, including details about each specific violation).

breaches of contract or regulatory violations." *Universal Health Servs.*, 579 U.S. at 194 (quotation and citation omitted). Instead, it was enacted for the purpose of stemming "massive frauds perpetrated by large contractors." *United States v. Bornstein*, 423 U.S. 303, 309 (1976). To be clear, the "FCA does not impose liability for any and all falsehoods," *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 540 (10th Cir. 2020), and is "not an appropriate vehicle for policing technical compliance with administrative regulations," *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 959 (10th Cir. 2008). And this court has made clear that whether an alleged instance of noncompliance with statutory, regulatory, or contractual requirements "goes to the very essence of the bargain or is only minor or insubstantial" is a relevant consideration in the "holistic" inquiry into the FCA's materiality requirement. *Janssen*, 949 F.3d at 541 (quotations omitted).

This consideration is particularly meaningful here in light of the paucity of information provided by Sorenson's complaint. The complaint is bereft of details from which any estimate of the quantum of alleged underpayments could be made, and thus there is no indication as to whether the amount involved is minor or significant.[9] Furthermore, there are absolutely no allegations in Sorenson's

---

[9]Although the complaint alleges that, in addition to his regular rate of pay, Sorenson was entitled to an additional $10.53 per regular hour worked on the Davis-Bacon jobsite, the court cannot begin to estimate the quantum of alleged

(continued...)

complaint indicating how DOL handles false certifications of Davis-Bacon wages, whether with regard to Wadsworth specifically or contractors generally. *See Universal Health Servs.*, 579 U.S. at 194–95 (noting that such information is relevant to the question of materiality). Nor is there any indication in Sorenson's complaint whether DOL was aware of Wadsworth's alleged Davis-Bacon violations and, if so, whether it continued to enter into contractual arrangements with Wadsworth. *See id.*; *see also United States ex. rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1174 (10th Cir. 2016) (holding that when the government learns of alleged noncompliance with contractual requirements but continues to award the contractor work on federally funded projects, the government's inaction is strong evidence of immateriality).

Sorenson's complaint asserts nothing more than a naked Davis-Bacon violation and that Davis-Bacon compliance is a condition to Wadsworth's right to payment under the deicing contract. To hold that such a complaint satisfies the FCA's rigorous materiality requirement would make a mockery of *Universal Health Services*. The district court did not err in concluding Sorenson's

---

[9](...continued)
underpayments without additional details regarding the specific jobsites and tasks at issue. As noted previously, the complaint fails to establish that Sorenson's work occurred on a Davis-Bacon jobsite or that it involved the type of labor covered by the Davis-Bacon Act.

complaint fails to satisfy the FCA's "demanding" materiality standard. *See*

*Universal Health Servs.*, 579 U.S. at 194–95.[10]

_____

[10]Sorenson's reliance on the Third Circuit's decision in *United States ex rel. International Brotherhood of Electrical Workers v. Farfield Co.*, 5 F.4th 315 (3d Cir. 2021), is entirely misplaced. That case involved a full-blown trial before a special master. *Id.* at 328. Thus, evidence as to the issue of materiality was extensively developed. *Id.* at 342–48. Importantly, the Third Circuit referred to specific trial evidence in concluding that the Davis-Bacon violation there, valued at $150,000, was neither minor nor insubstantial. *Id.* at 346–48. Here, as noted above, Sorenson's allegations relating to the magnitude of the violation are so limited and opaque that they do not plausibly indicate something more than a minor or insubstantial violation. Furthermore, the record evidence in *Farfield Company* specifically demonstrated that the defendant construction company's leadership believed DOL would put it out of business if it learned of the company's actions because of the company's history of Davis-Bacon violations. *Id.* at 345. Here, Sorenson simply alleged accurate certification was a prerequisite to payment, without any allegations suggesting that DOL would have even refused payment if it learned of the alleged violations here, much less taken more drastic action.

It is certainly true that *Farfield Company* contains an extensive discussion and analysis of the Davis-Bacon regulatory scheme and, following that analysis, concludes the entirety of the scheme supports the conclusion that false Davis-Bacon certifications are material. *Id.* at 343–45. There are, however, two significant problems with Sorenson's reliance on this aspect of *Farfield Company*'s analysis. First, none of this analysis is hinted at in his complaint, nor is it set out in his response to Wadsworth's motion to dismiss. Instead, in the district court proceeding he stood on the allegation that materiality was established simply because accurate certification was a precondition to payment. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). Second, as already discussed above, *Farfield Company*'s analysis of the issue of materiality did not begin and end with an analysis of the statutory scheme. 5 F.4th at 342–48. Instead, it was merely one consideration that was part of a holistic analysis of the existence of materiality. As explained extensively above, there is simply nothing else in Sorenson's complaint that could be considered as part of the necessary holistic analysis.

(continued...)

-19-

## B. The Grant of Summary Judgment

Sorenson brought a claim of FCA retaliation under the provisions of 31 U.S.C. § 3730(h).  Section 3730(h)(1) allows an employee to recover from his employer if he "is discharged . . . or in any other manner discriminated against in the terms and conditions of employment because of [his] lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]."  To prevail on a § 3730(h)(1)-based claim of retaliation, Sorenson must show: (1) he engaged in protected activity, (2) Wadsworth was put on notice of that protected activity, and (3) Wadsworth retaliated against him because of that activity.  *Reed*, 923 F.3d at 764.  The district court granted summary judgment in Wadsworth's favor on both the second and third showing required by *Reed*.  We agree no reasonable jury could find Sorenson connected his Davis-Bacon complaints to the FCA, and thus a jury could not find that Wadsworth was put on notice of the protected activity.  This court affirms the district court's grant of summary judgment entirely on that basis and does not

---

[10](...continued)
Thus, in contrast to Sorenson's assertions, *Farfield Company* does not advance his cause at all.  Instead, it points to the utter shortcomings of the factual allegations in Sorenson's complaint.  It also serves to delimit the extent of our decision today.  We do not hold that a false certification of Davis-Bacon compliance can never constitute a violation of the FCA.  We hold simply that the exceedingly threadbare complaint before this court is insufficient to satisfy the FCA's materiality requirement.

consider the district court's alternative basis for granting Wadsworth summary

judgment on Sorenson's FCA retaliation claim.

### 1. Summary Judgment Standard

This court "review[s] the grant of summary judgment de novo, applying the

same legal standard used by the district court and examining the record to

determine if any genuine issue of material fact was in dispute; if not, we

determine if the substantive law was correctly applied." *Thomas*, 820 F.3d at

1168 (quotation and alterations omitted)  In so doing, "we view the factual record

and draw all reasonable inferences therefrom most favorably to [Sorenson] as the

nonmoving party." *Id.* (quotation omitted).

### 2. Relevant Factual Background

Viewing the record in Sorenson's favor, the relevant facts—those relating

to whether Wadsworth was put on notice that Sorenson was engaging in conduct

protected by the FCA—are as follows.  Shortly after he began working as a

Wadsworth truck driver, Sorenson began speaking with "several people" about his

suspicion Wadsworth was not paying him in accordance with the Davis-Bacon

Act.  He spoke with his supervisor, Steven Hall, approximately two weeks after

he received his first paycheck and questioned Hall as to why he was not receiving

his full wages under the Act.  Hall replied "that this was the way it was" and told

Sorenson "to let it go or they will fire you."  Sorenson had a similar conversation

with Hall two weeks later.  Sorenson indicated he had talked to his co-workers

and found out Wadsworth "was shorting Davis-Bacon wages on all of their federal contracts." Hall responded as follows: "I understand that it is what it is, and it's not right, but just shut up and stop making waves." Approximately one week later, Sorenson met with Hall's supervisor, Frank Barney, and again asked why he was not receiving his full wages under the Act. Barney told Sorenson he "was getting all the Davis-Bacon wages that he was going to get." Barney also told Sorenson to stop discussing the issue with his co-workers.

Following these meetings, Sorenson was told not to come in to work for three days. He returned to work on October 30, 2014, and worked without incident until November 8, 2014, when he became "very ill." Sorenson left the jobsite early and was told he could not return to work until he received two doctors' notes. Sorenson obtained the required releases on November 11, 2014, and returned to work on November 14, 2014. When he arrived, he was informed that everyone was laid off and was sent home.

**3. Analysis**

Sorenson asserts the district court misconstrued this court's decision in *Reed* and that, properly read, *Reed* supports his argument that the evidence summarized above would allow a reasonable jury to conclude Wadsworth was on notice he was engaging in activity protected by the FCA. For those reasons set out below, Sorenson's arguments in this regard are entirely unconvincing.

*Reed* began its analysis of the notice requirements of FCA retaliation claims by noting that prior to 2009 a circuit split existed over "what conduct qualified as 'in furtherance of' a qui tam action." 923 F.3d at 764. Our court, like several others, "interpreted that language to mean that protected activity encompassed conduct preparing for a private qui tam action or assisting in an action brought by the government." *Id.* at 764–65 (quotation omitted). Under that reading of § 3730(h), "an employee who . . . reported a False Claims Act violation to her supervisor but did not pursue a qui tam action had not engaged in protected activity." *Id.* at 765. Other circuits had a more expansive catalog of activities that were protected under § 3730(h). *Id.* Congress resolved this split in 2009 and 2010 by amending the FCA to protect "'lawful' acts 'in furtherance of' either 'an action' under the Act 'or other efforts to stop 1 or more violations of' the Act." *Id.* (quoting 31 U.S.C. § 3730(h)(1)) (emphasis omitted). *Reed* makes clear that in analyzing whether any defendant is put on notice an employee was engaging in activity protected by the FCA, courts must keep in mind the expanded universe of protected activities. *See id.* at 765–66. With that in mind, *Reed* moved on to begin the process of "defining the boundaries of what constitutes protected efforts to stop a violation of the [FCA]." *Id.* at 766–67. And, determinative of the issue on appeal, *Reed* held that, to satisfy the notice requirement, "a relator's actions still must convey a connection to the [FCA]." *Id.* at 767 (citing *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d

-23-

190, 202 (4th Cir. 2018) (noting that "plaintiff's actions need not lead to a viable" qui tam action, but "they must still have a nexus to an FCA violation"); *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 59 n.8 (1st Cir. 2017) (explaining that a relator's "activities must pertain to violations" of the Act)). "After all, the text of [§ 3730(h)(1)] says the 'other efforts' must be 'to stop 1 or more violations of [the False Claims Act].'" *Id.* (alteration in original).

*Reed* is directly on point and demonstrates Sorenson failed to produce sufficient evidence from which a jury could conclude Wadsworth was on notice Sorenson's activities were part of an effort to stop violations of the FCA. Sorenson's inquiries to both Hall and Barney were specifically and distinctly related to his wages. He certainly stated to Hall and Barney that Wadsworth was not paying its employees consistently with the Davis-Bacon Act. But non-compliance with the wage requirements of the Act does not, standing alone, relate to potential violations of the FCA. Importantly, Sorenson has not identified a single case standing for the proposition that merely informing an employer it is not complying with a statutory, regulatory, or contractual requirement—whether through ignorance, by accident, or with intent—is enough to establish a nexus to the FCA. Under the rule posited by Sorenson, the anti-retaliation provisions of the FCA would be, in effect, incorporated into the entire body of the federal statutory and regulatory code. *Reed* clearly, and quite properly, rejects such an approach as unhinged from the FCA's requirement that protected activity must be

to prevent "violations of the False Claims Act." 923 F.3d at 767 (quotation and alterations omitted).

## III.  CONCLUSION

For those reasons set out above, the orders of the United States District Court for the District of Utah dismissing Sorenson's Claims 1, 2, and 3, and granting summary judgment to Wadsworth on Sorenson's Claim 5 are hereby **AFFIRMED**.